**62 So.2d 268**

**STATE v. ROSHTO et al.**

**No. 40859.**

Nov. 10, 1952.

Rehearing Denied Dec. 15, 1952.

Blanchard & Blanchard, Donaldsonville, for appellants.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., F. C. Claiborne, Dist. Atty., New Roads, and Charles H. Dameron, Asst. Dist. Atty., Port Allen, for appellee.

LE BLANC, Justice.

Alfred Roshto, alias Buddy Roshto, Carlysle Roshto and E. R. Roshto, alias Alex Roshto, are appealing from a verdict of a jury under which they were convicted and

sentenced in the district court on an indictment which charged them with theft of "a certain animal, to-wit, one heifer." They were sentenced to be confined in the State Penitentiary for a period of three years. A fourth party named Eugene Persilver, Sr., had been jointly indicted with them but on their own motion they obtained a severance and were tried separately from him. We understand from brief of counsel for the State that Persilver was also convicted and that he is now serving the sentence that was imposed on him by the district judge.

The present defendants rely on five bills of exception reserved during the trial to obtain a reversal of the verdict under which they were convicted. The first of these was taken upon the refusal of the trial judge to sustain a motion to quash the indictment.

The motion is based on the proposition that the indictment is lacking in certain essential allegations as regards the ownership of the stolen property or the manner or method of the theft and in those respects it is violative of Sec. 10 of art. 1 of the Constitution which provides that "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him; * * *." Further it is contended under the motion that the indictment did not charge the defendants with the theft of either "cattle, horses, mules, sheep, hogs, or goats", as denounced by Act 173 of 1950, now LSA-R.S. 14:67.1;

that the therein named quadrupeds being exclusive there can be no theft of a heifer, such being the charge against them.

The statute under which defendants were prosecuted reads as follows:

"Theft of cattle, horses, mules, sheep, hogs, or goats is the misappropriation or taking of such cattle, horses, mules, sheep, hogs, or goats belonging to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of the cattle, horses, mules, sheep, hogs, or goats is essential."

The indictment in this case was drawn in conformity with LSA–R.S. 15:235 which provides as follows:

"The following forms of indictments may be used in the cases in which they are applicable, but any other forms authorized by this or any other law of this state may also be used".

Then follows the forms to be used for the various offenses and when we come to the one relating to theft of cattle, horses, etc., we find that it reads as follows:

"Theft of Cattle, Horses, Mules, Sheep, Hogs, or Goats—A. B. committed the theft of a certain animal, to wit, (description and number of animal or animals)."

In the section it is also stated:

"Provided further that the district attorney, if requested by the accused prior to arraignment, may be required by the judge to furnish a bill of particulars setting up more specifically the nature of the offense charged."

The indictment in this case seems to track the law and cannot be held deficient for lack of sufficient information to the defendants of the nature and cause of the accusation against them. The validity of information and indictments in what is called the "short forms" prescribed in R.S. 15:235 has been frequently upheld by this court in each instance "where they were found to be sufficient to properly inform the accused of the nature of the accusation lodged against him within the meaning and contemplation of Section 10 of Article I of the Constitution of 1921 and Article 227 of the Code of Criminal Procedure". See State v. Wright, 215 La. 529, 41 So.2d 76, 77, and cases therein cited.

In State v. Pete, 206 La. 1078, 20 So.2d 368, 370, this court upheld an information which was attacked on the ground that it did not contain the essential averment required by art. 14:67 of the LSA–Criminal Code defining the crime of "theft". The information charged "theft of an automobile of the value of Twelve Hundred and no/100 (1200.00) Dollars, the property of Gordans Drug Store, Inc." In passing on the question of lack of sufficient averments, the court stated:

"A mere reference to the bill of information shows that the defendant in this case was charged in the precise language of the Code of Criminal Procedure, as amended by Act No. 147 of 1942. There was, therefore, no necessity for including in such charge the averment that the taking of the automobile by the defendant was with the intention of depriving the owner thereof permanently to make it valid or to distinguish it from the crime of 'Unauthorized use of movables' defined in Article 68 of the Criminal Code. State v. Miller, 170 La. 51, 127 So. 361; State v. White, 172 La. 1045, 136 So. 47; State v. Ducre, 173 La. 438, 137 So. 745; and State v. Digilormo, 200 La. 895, 9 So.2d 221. Furthermore, the defendant's constitutional guarantee that he shall be fully apprised in the accusation of the charge against him is amply protected by the provision in this same article 'That the District Attorney, if requested by the accused prior to arraignment may be required by the Judge to furnish a bill of particulars setting up more specifically the nature of the offense charged.' State v. Brooks, 173 La. 9, 136 So. 71; State v. Dark, 195 La. 139, 196 So. 47."

It is significant to note that in this case a bill of particulars was requested and, without being required by the judge to do so, the district attorney complied with the request by furnishing all the information desired to the apparent satisfaction of counsel for the accused.

■■ The next contention made under this bill is also without merit. It is urged that in specifying "one heifer" as the object of the theft, the indictment is fatally defective as the statute merely denounces the theft of certain enumerated quadrupeds to the exclusion of all others. Therefore, it is argued, there is no crime such as the one the accused stands charged with.

The argument overlooks the fact that all of the quadrupeds enumerated in the statute belong to the general class denominated as animals. They each represent a different group; cattle, for instance, representing the bovine group; horses, the equine; hogs, the porcine; and so forth, and it is but natural that in having to refer to any particular species of any of these groups, it be referred to as an animal. It is common knowledge, we believe, that a heifer belongs to the bovine group of cattle and is therefore an animal belonging to that group. The point we here make is strongly emphasized by the statute which permits the use of the short form indictment and which, with reference to the crime involved in this case, prescribes that it set forth that "A. B. committed the theft of a certain *animal*, to-wit" and this to be followed by a description of the animal. (Emphasis added.)

■ Bill No. 2 was reserved to the court's overruling defendants' objection to

the use of certain exculpatory statements (later admitted to be "yarns") made by the defendants to the sheriff of the Parish of Iberville. The objection was made when the District Attorney advised the court and attorneys for the accused in the presence of the jury that he intended to use these statements. The objection was that these declarations were made at a date subsequent to the date of the crime and therefore were not part of the res gestae. The court, stating that the statements were not confessions and contained no criminal intent, felt that there was really nothing for the court to rule upon at the time because, as relates to confessions, the court can only pass on the question as to whether they were voluntarily made or not. The court ruled that the District Attorney could proceed with the evidence and reserved the right to defendants to object to its admissibility.

Counsel for defendants take the position that these statements were not admissions, were not part of the res gestae, and were used merely to later show they were untrue and cast guilt on the defendants, thereby prejudicing them before the jury. They argue that had the statements not been admitted, they would not have had to put defendants on the stand to attempt to overcome the guilt cast upon them. The court in its per curiam to this Bill of Exception states that it did not fully understand counsel for defendant's objection and that its only rulings were that the statements were voluntary, that each statement was only to be used against its maker, and that it was overruling defendants' objection to the statements because they did not form part of the res gestae. The court also noted that the bill of exception does not show the circumstances under which and the evidence upon which the ruling complained of are based as required by law, nor do they show anything prejudicial to or indicating a violation of the rights of the accused. There is definite authority for the proposition that exculpatory statements are admissible for the purpose of showing their falsity.

In State v. Aspara, 113 La. 940, 37 So. 883, 889, the matter was stated in this fashion:

"It is well settled that a confession, if free and voluntary, is admissible in evidence, even though made by one who at the time of making it was under arrest. State v. Jones, 47 La.Ann. 1524, 18 So. 515; State v. Lewis, 112 La. 872, 36 So. 788; Wharton's Cr.Ev. (16th Ed.) 543. But the matter objected to was not a confession; it was an exculpatory statement (Wigmore, Cr.Ev. vol. 1, § 821), and, as the state was in a position to prove that it was an attempt to lay the foundation for the establishment of a false alibi, it was admissible as tending to show consciousness of guilt coupled with a desire to escape punishment. Evidence of falsehood on the part of the accused in 'giving an account of himself or of

the transaction, or his relation to it, is competent as affording a legitimate presumption of guilt. For this purpose the prosecution may prove such declarations of the accused, and then prove their falsity'."

This ruling was followed in State v. Hayes, 162 La. 310, 110 So. 486. The statements involved in this case were not sought to be introduced as part of the res gestae, and as they were admissible for the purposes used, the fact that they do not form part of the res gestae is of no importance.

■ In the per curiam of the judge it seems that there was also involved in this bill of exception statements made by two of the accused to two other persons who were witnesses for the State. The judge's per curiam indicates that counsel for the accused objected when these witnesses were questioned regarding the statements and reserved a bill when the objection was overruled. If they reserved such a bill they failed to perfect it. Conceding however that this objection under bill of exception No. 2 included these statements the only objection made to them was the same as to the others made to the sheriff which was that they did not form part of the res gestae, and even though they may be said to be inculpatory rather than exculpatory statements as were those made to the sheriff, they are governed by the same ruling because such an objection is not a valid objection to the introduction of

that type of statement. As stated in brief on behalf of the State if the admissibility of incriminating and inculpatory statements made by an accused depended on their being part of the res gestae, it would be a rare case indeed in which they would be admitted because they are seldom made under circumstances forming part of the res gestae.

■ Bill of Exception No. 3 was reserved to the Court's ruling on objection of the district attorney to the following questions propounded to the sheriff by counsel for the defendants.

"Q. From your personal investigation or the investigations of any of the deputies were you able to locate one iota of direct evidence as to who killed this cow?"

"Q. Did any of your deputies report to you that they had knowledge as to having seen anyone who killed the cow?"

The objections made by counsel were to the effect that the first question called for an expression of opinion from the witness rather than to elicit facts and further that the question contemplated the giving by the sheriff of information from his own deputies which would be hearsay. Objection to the second question was that it called for hearsay testimony.

Counsel for the defendants complained that by sustaining these objections the trial judge deprived them of their right of cross-

examination; that the evidence sought to be obtained from the sheriff was concerning the fact that he had not been able, notwithstanding his investigation and that of his deputies, to secure a single particle of evidence to show who had killed the cow or locate any one who had seen the party who had killed it.

The trial judge in his per curiam states that the sheriff, on direct examination, had not testified to anything concerning any reports he had received from his deputies. That being so, the accused were not deprived of their right of cross-examination. Furthermore, the trial judge states that in addition to the objections raised by counsel for the State, there were other reasons why the questions propounded were not proper; principally because they were immaterial and irrelevant, and in this connection he states further that at the beginning of the trial, in their motion for a severance, the accused and their counsel set forth the fact that the heifer involved in this case was killed by their co-defendant, Eugene Persilver, Sr., and that they had only bought some meat from him. Further that Carlysle Roshto and Alex Roshto testified and admitted that they knew who had killed the heifer, all of which tends to sustain the ruling of the trial judge that the testimony, if any, which would come from the sheriff in answer to the questions propounded would have been totally irrelevant and immaterial. We find no merit in this bill.

Bill of Exception No. 4 was reserved to the ruling of the trial judge in refusing the defendants a new trial on the motion filed on their behalf.

The motion presented the same issues as were disposed of in the motion to quash the indictment and in the other bills of exceptions. In addition it contained the usual pro forma allegations that the verdict was contrary to the law and the evidence. Other issues were raised which have since been abandoned.

 What now seems to be the principal issue stressed by counsel is one to the effect that there was no evidence to disprove the defense of these accused that the only part they took in this whole transaction was to buy some meat from the slaughtering of the heifer and therefore they cannot be found guilty of its theft.

As has previously been stated, and as appears from one of the per curiams of the trial judge, Persilver is the one who actually shot the heifer but the fact is that the three accused, as shown by statements made by them, with Persilver, had singled this heifer out as the one to be killed and slaughtered by them, all together. They actually participated in the killing and assisted in the slaughtering and in dividing up the meat. Under LSA–R.S. 14:24 they were principals in committing the crime for the provisions of that section of the statute is that:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

The theft took place when the animal was killed by being shot, at which time it was a live animal and the argument now made that these accused cannot be convicted of theft because they only carried away parts of a dead animal is wholly without merit. Since the adoption of the Criminal Code, asportation is no longer an ingredient of the crime of theft. Under the provisions of that Code, LSA–R.S. 14:67.1, the "taking" of an animal without the consent of the owner, and with intent to deprive him permanently thereof is sufficient to make out a case and by their participation in the killing of the cow, slaughtering it and dividing the meat, jointly, these defendants were guilty of the crime with which they were charged and for which they were convicted.

Bill of Exception No. 5 was taken to the court's refusal to sustain defendants' motion in arrest of judgment. It presents no issue that has not been considered and we therefore hold it to be without merit.

For the reasons stated the conviction and sentence appealed from are affirmed.