229 So.2d 329

**STATE of Louisiana**

**v.**

**Percy James ANDERSON et al.**

No. 49643.

Nov. 10, 1969.

Rehearing Denied Dec. 15, 1969.

Thomas Stagg, Jr., W. Gene Carlton, Shreveport, Thomas B. Wilson, Bossier City, Richard H. Switzer, R. Clyde Lawton, Jr., Shreveport, Jesse N. Stone, Jr., for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Albert S. Lutz, Jr., Asst. Dist. Atty., for appellee.

SANDERS, Justice.

The charge in this criminal prosecution is aggravated rape, a capital offense.

On the evening of September 11, 1965, a 16-year-old high school girl was on a date with her boy friend. After having soft drinks at a drive-in, they parked on a gravel road near West 70th Street, one of the main traffic arteries in Shreveport. While they were seated in the car, they heard a crash at the left rear window of the car and saw four young negroes. The assailants threatened the girl's escort with a knife and pulled her from the car into the woods. Rotating the guard of her companion, each of them raped her. They then left the scene with the car keys.

The victim and her escort were picked up by a passing motorist and taken to her home. The Police Department was notified, and the girl was hospitalized.

After an intensive investigation, the Shreveport Police Department apprehended the four defendants. Each gave a confession of his own guilt and named the other three defendants as participants in the crime.

After trial, the jury found Anderson, Robinson, and Washington guilty as charged, and they received the mandatory death sentence. The jury found Breda guilty without capital punishment, and the trial judge sentenced him to life imprisonment. All defendants have appealed, relying upon 58 Bills of Exceptions.

*BILLS OF EXCEPTIONS NOS.*
*1 and 2: Motion to Produce*
*and Prayer for Oyer.*

The defendants filed a preliminary motion and prayer for oyer seeking to have the State produce all confessions lie detector tests, reports, warrants, names of informants, and other evidence discovered after defendants' arrest.

The State and defense counsel agreed to submit the motions on questions of law. On the assigned date, the State informed the court that it had furnished defense counsel all written confessions, admissions, and statements of the defendants, as well as copies of "jail register cards" and "arrest sheets" pertaining to defendants.

After oral argument had begun, the defense sought to call the Police Commissioner and Chief of Police of Shreveport for testimony. The District Attorney objected, pointing out that by agreement the matter was to be taken up on questions of law only. The trial judge sustained the objection, and the defendants reserved Bill of Exceptions No. 1. Later, the defendants reserved Bill of Exceptions No. 2 to the overruling of the motion to produce and prayer for oyer.

■ Since the motion was to be submitted on questions of law, the question before the court was whether the defense had a legal right to the production, or discovery, of the evidentiary items not already furnished by the State. Hence, the trial judge correctly declined to receive testimony at this point.

■ Full pre-trial discovery is unavailable in Louisiana criminal proceedings. State v. Hunter, 250 La. 295, 195 So.2d 273; State v. Pailet, 246 La. 483, 165 So.2d 294; State v. Shourds, 224 La. 955, 71 So. 2d 340.

In State v. Hunter, we stated:

"Louisiana was in the vanguard of the states in granting a defendant the right to inspect his written confession before trial. See State v. Dorsey, supra; State v. Tune, 13 N.J. 203, 98 A.2d 881; and 74 Harv.L.Rev. 940, 1054. However, we have steadfastly refused to broaden this holding into full pre-trial discovery of the varied items of evidence in criminal cases. See State v. Johnson, 249 La. 950, 192 So.2d 135 (oral confession and statements of witnesses); State v. Dickson, 248 La. 500, 180 So.2d 403 (police motion picture of defendant in criminal act); State v. Pailet, 246 La. 483, 165 So.2d 294 (wire-tap recordings); State v. Bickham, 239 La. 1094, 121 So.2d 207 (defendant's oral statements); State v. Lea, 228 La. 724, 84 So.2d 169 (oral confession); State v. Shourds, 224 La. 955, 71 So.2d 340 (documents); State v. Simpson, 216 La. 212, 43 So.2d 585 (evidence produced at grand jury hearing); State v. Vallery, 214 La. 495, 38 So.2d

148 (statement of prosecuting witness); and State v. Mattio, 212 La. 284, 31 So. 2d 801 (police report).

\* \* \* \* \* \*

"The holding of the Court has been dictated by vital considerations related to fair balance in criminal procedure and the protection of the public against the ravages of crime."

A defendant is entitled only to the production of written or video-taped confessions. State v. Crook, 253 La. 961, 221 So.2d 473; State v. Hall, 253 La. 425, 218 So.2d 320; State v. Dorsey, 207 La. 927, 938, 22 So.2d 273.

◼ In the instant case, there were no video-taped confessions and the State furnished to the defendants all written confessions. Hence, the trial judge correctly overruled the motion to produce and prayer for oyer.

*BILLS OF EXCEPTIONS NOS. 3, 4, 5, and 6: Motion to Suppress the Confessions and Other Evidence and Bar Their Presentation to the Grand Jury.*

Before their indictment, defendants filed a motion to suppress, designed to bar the confessions and other evidence from the Grand Jury. They contended the evidence had been obtained in violation of their constitutional rights. The trial judge overruled the motion. The defendants applied

to this Court for supervisory writs, but the Court denied the application. (Docket No. 47,947, October 18, 1965).

◼ No authority exists in Louisiana for suppressing evidence before the Grand Jury. The Grand Jury is an accusatory body only. Its deliberations are clothed in secrecy. Statute directs the Grand Jury to consider only legal evidence. Former R.S. 15:213; Art. 442, C.Cr.P. The courts, however, properly decline to regulate the evidence presented to the Grand Jury. See State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Dallao, 187 La. 392, 175 So. 4; State v. Britton, 131 La. 877, 60 So. 379. To monitor such evidence would destroy the veil of secrecy and impede the operations of the Grand Jury. The basic policy has now been codified in Article 703 of the Code of Criminal Procedure (1966), dealing with the motion to suppress. The Code Article limits the motion to the suppression of written confessions and tangible evidence "for use \* \* \* at the trial."

Hence, these Bills lack merit.

*BILLS OF EXCEPTIONS NOS. 9, 10, and 11: Motion to Quash Indictment.*

Defendants reserved these Bills to the overruling of a motion to quash the indictment on the following grounds: (1) an attorney served on the Grand Jury that returned the indictment; (2) the indictment charged more than one crime in violation

of LSA–R.S. 15:217;[1] and (3) the District Attorney was without authority to make a substantial amendment to the indictment without resubmission to the Grand Jury.

The original indictment against the four defendants read in part as follows:

"[The defendants] committed aggravated rape upon [the victim], in that they did have sexual intercourse with sexual penetration with the said [victim], a female person not the wife of and not judicially separated from bed and board from the said Percy James Anderson, Arthur Lee Washington alias Arthur Lee Conners, Hubert Breda and John Henry Robinson, the said act being committed without her lawful consent at a wooded area located northeast of the intersection of the Texas and Pacific Railroad tracks and 70th Street in Shreveport, Louisiana, the said [victim] having resisted the act to the utmost but her resistance was overcome by force and the said [victim] being prevented from continuing to resist the act to the utmost by threats by the said Percy James Anderson, Arthur Lee Washington alias Arthur Lee Conners, Hubert Breda and John Henry Robinson of great and immediate bodily harm, accompanied by apparent power of execution * * *"

After the motion to quash had been filed, the trial judge permitted the District Attorney to amend the indictment as follows:

"That after the phrase 'apparent power of execution' and before the phrase 'contrary to the form of the Statute of the State of Louisiana,' there be inserted the following words:

"'more particularly the said Percy James Anderson did directly commit the act of unlawful sexual intercourse constituting the crime in this specific indictment and the other three named defendants were at all times, before, during and after the commission of said act of unlawful sexual intercourse, parties to said crime and principals in the commission of said crime under the laws of Louisiana;'"

■ The amendment made it quite clear that the State was relying upon the physical act of rape by Percy James Anderson and the other three defendants were charged as principals in the rape. The indictment charges only one crime.

■ We find no error in the ruling of the trial judge allowing the amendment. See former LSA–R.S. 15:252, 253, 284; State v. Fitzgerald, 248 La. 487, 179 So.2d 906; State v. Scheuering, 226 La. 660, 76 So.2d 921; State v. Marcotte, 229 La. 539, 86 So.2d 186. Compare Art. 487, C.Cr.P. (1966).

1. Now Art. 493, C.Cr.P.

Defendants contend that service of an attorney on the Grand Jury vitiated the indictment. As an officer of the court, they suggest, he was in a position to exert undue influence on the jury body.

■ It is true that attorneys at law are exempt from serving as grand jurors, but this exemption is personal to them. If an attorney fails to claim the exemption, his professional status provides no ground to challenge his service on the Grand Jury. In other words, his membership in the legal profession does not disqualify him. Former LSA–R.S. 15:174; Art. 403, C.Cr. P. (1966); State v. Goree, 242 La. 886, 139 So.2d 531; State v. Ross, 212 La. 405, 31 So.2d 842.

We conclude, therefore, that the presence of the attorney on the Grand Jury provides no basis for quashing the indictment.

*BILLS OF EXCEPTIONS NOS. 14, 15, 16, 17, 18, 23, 50, 51, 52, 53, 54, 55, 65: Second Motion to Suppress and the Admissibility of the Confessions.*

Before trial, but after indictment, defendants filed a second motion to suppress the confessions and other evidence. After an evidentiary hearing, the trial judge overruled the motion. Later, the defendants unsuccessfully objected to the introduction of the confessions at the trial. Although defendants make various arguments, their attack concentrates upon the following basic contentions:

(1) The confessions were the product of an illegal arrest and are inadmissible under the holdings of the United States Supreme Court in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 and Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676.

(2) The confessions were involuntary, having been coerced by police threats and violence.

(3) The essential pre-interrogation warning was not given to the defendants, as required by the United States Supreme Court decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

At the time of the crime, the law governing arrest was set forth in Article 60 of the Louisiana Criminal Code of 1928. It authorized peace officers to arrest without a warrant for a felony under any of the following conditions:

"(b) When such person has committed a felony although not in the presence of the officer;

"(c) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it;

"(d) When he has reasonable cause to believe that a felony has been committed

and reasonable cause to believe that such person has committed it;"

The record leaves no doubt that a felony had been committed. At the hearing on the motion to suppress, the crime was established by the testimony of the victim, her companion, and the examining physicians.

The sole question is whether the police had reasonable cause to arrest the defendants for the crime.

▮▮▮ Testimony on the motion consumed five days. It discloses the tangled web of a difficult police investigation of two crimes, one the rape charged here and the other a nearby robbery. The following factors emerge to sustain the arrest of defendants for the rape: the description of the offenders furnished by the victim and her escort; the names and nicknames heard by the victim during the commission of the crime; information placing the defendants near the scene of the rape shortly before it occurred; and leads given by various informers to law enforcement officers.

We conclude the police officers had probable cause to arrest the defendants. Hence, the Wong Sun and Davis decisions, relied upon by the defendants, are inapplicable.

▮▮▮ The confession of a person accused of crime is admissible in evidence only if it is voluntarily made. LSA–R.S. 15:451, 452. The burden is on the State to establish beyond a reasonable doubt that it was freely and voluntarily given and was not induced by threats, duress, or violence. State v. Alexander, 252 La. 564, 211 So.2d 650; State v. Ragsdale, 249 La. 420, 187 So.2d 427; State v. Scott, 243 La. 1, 141 So.2d 389.

▮▮▮ The defendants charged that the police officers beat, kicked, and otherwise abused them to elicit the confessions. We have reviewed the evidence concerning this issue. The charge was refuted by the most cogent testimony, that of physicians who examined the defendants and police officers who had contact with them. We find, as did the trial judge, that the State has sustained its burden of proving the confessions were voluntary.

More difficult are the questions raised by Miranda v. Arizona: whether the pre-interrogation warning required by that decision was given and whether the defendants made an intelligent waiver of their legal rights.

*Miranda* requires that a suspect be given a four-fold warning before custodial interrogation: (1) that he has a right to remain silent; (2) that anything he says can be used against him in court; (3) that he has the right to the presence of an attorney; and (4) that if he cannot afford an

attorney, one will be appointed for him prior to questioning if he so desires.

In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the United States Supreme Court held that the *Miranda* rules apply to "cases in which the trial began after the date of our decision," that is, after June 13, 1966.

The State contends the *Miranda* rules are inapplicable to this case, since the hearing on the motion to suppress the confessions began before the decision. Alternatively, the State asserts the police officers gave the essential warning.

A jury trial begins when the first prospective juror is called for examination. Former LSA–R.S. 15:332; Art. 761, C.Cr. P. (1966). In the present case, the selection of the jury began on February 13, 1967. Hence, the trial began on that date.

■ The motion to suppress was designed to bar the use of the confessions and other evidence at the trial. See State

v. Davidson, 248 La. 161, 177 So.2d 273. The hearing on the motion formed no part of the trial.

Since the trial of the present case began after the *Miranda* decision, the rules announced by the United States Supreme Court in that case apply here.

■ We have reviewed the extensive evidence concerning the warnings given. Various warnings were given by several officers during the crucial period. We find, as did the trial judge, that the fourfold warning was given to all defendants. We conclude that all of them, except Hubert Breda, made an intelligent waiver of the right of silence and of counsel. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; State v. Graves, 246 La. 460, 165 So.2d 285.

■ Before confessing, Breda asked the police officers for a lawyer. He was informed he could get one after he was charged.[2]

2. This was virtually conceded by the interrogating officer:
"Q Did you tell him at that time he could have a lawyer if he wanted one?
"A He asked about a lawyer. He asked how do I get a lawyer? And he said that he didn't have enough money to get a lawyer.
"Q And you didn't tell him then, I don't believe, how he could get one, did you?
"A I didn't tell him how he could get one to help him at that particular time. I did tell him that if he was charged, or when he was charged with this offense

that the Courts would appoint him an attorney. * * *" [Tr. Vol. 8, p. 1733]
"Q Yes, sir. Now, I believe you said that he asked you if he could have a lawyer and you stated words to the effect that after he gave you a statement that the Court would appoint a lawyer for him; something of that sort?
"A I told him that—He asked about, how do I get an attorney or a lawyer. He said, I don't have enough money to hire an attorney. That was his remarks to me. And I said that after you are charged—and I told him that he was go-

In Miranda v. Arizona, supra, the United States Supreme Court held:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. *If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.* If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." (Italics ours).

Since Breda was denied the right to counsel during custodial interrogation, his confession was inadmissible. We must re-

verse his conviction. As to the other defendants, these bills of exceptions are without merit.

*BILLS OF EXCEPTIONS NOS. 24, 25, 26, 66, 67, 68, and 69: Motion to Sever and Admission of Confessions at Joint Trial.*

Defendants Breda, Robinson, and Washington each filed motions to sever. These were based largely upon the allegation that the confessions given implicated the co-defendants, as well as the confessor. After oral argument, the trial judge overruled the motions. All defendants objected to the introduction of the confessions on the same ground. As a basis for reversal, the defendants rely upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476.

In *Bruton,* the United States Supreme Court held the admission of a defendant's confession implicating a co-defendant at a joint trial violated the co-defendant's right of confrontation under the Sixth Amendment to the United States Constitution.

As to the confessions, the trial judge gave the following charge to the jury:

"Any confession or admission should be restricted entirely to the person making the confession or admission. One person by his confession cannot bind or

ing to be charged—that the Courts would appoint him an attorney before he was tried.

"Q Now, that was all before he made the statement, wasn't it?
"A Yes." [Tr. Vol. 8, p. 1734]

give evidence that would in any manner incriminate another. The reason for this is that every accused is entitled to be confronted with the witnesses against him in order that he may cross examine them and determine their opportunity for knowledge as well as their veracity. Such incrimination would be entirely hearsay which under our rules is generally inadmissable as evidence."

Although there is a variation in the details of the four confessions, all coincide on the salient point: acting in concert, the four defendants raped the victim in succession. None of the confessions absolves either the confessor or any of his co-defendants.

■ The harmless error rule applies to the use of such confessions at a joint trial. Art. 921, C.Cr.P.; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284 (1969); State v. Hopper, 253 La. 439, 218 So.2d 551 (1969).

We find no substantial conflict in the confessions. Hence, assuming error in the ruling of the trial judge admitting the confessions at the joint trial, it was harmless beyond a reasonable doubt.

Recently in State v. Hopper, supra, we applied the harmless error rule to the admission of such confessions, stating:

"Here, however, in the context of the circumstances presented, we have the codefendants' admissions standing side by side with each confessor acknowledging in his own confession the same criminal conduct ascribed to him by the other. The hearsay statements are corroborated by each codefendant's extrajudicial statement or vice versa. Under such a situation, it is wholly unnecessary to speculate whether the cautionary instructions of the judge may not have effectively prevented the jury from disassociating each confessor's inculpation of his codefendant in determining the latter's guilt. For, as we see it, the hearsay caused no injury and did not deprive either defendant of a *substantial* constitutional right because, if each defendant had taken the stand, it is difficult to perceive what benefit either could have gained by cross-examining the other anent the same criminal conduct to which each had already voluntarily confessed extrajudicially."

We conclude these Bills of Exceptions lack merit.

### BILL OF EXCEPTION NO. 32: *Motion for Mistrial:*

Immediately after the selection of the jury, defendants moved for a mistrial on the ground that the State had peremptorily challenged several prospective negro jurors, thus leaving the petit jury without negro membership.

■ A peremptory challenge is a challenge of a proposed juror without as-

signing cause. The right of peremptory challenge is a substantial right accorded by statute. Within the number allowed by law, the exercise of the right may not be judicially abridged or denied. Art. 799, C. Cr.P.; State v. Sercovich, 246 La. 503, 165 So.2d 301; 50 C.J.S. Juries § 280, p. 1068.

In a capital case, Article 799 of the Code of Criminal Procedure grants the State twelve peremptory challenges for each defendant, a number corresponding to that accorded to the defendants. Of the 48 challenges accruing to the State in the present case, the State used only 23.

Defendants contend eight of these challenges were used to excuse prospective negro jurors. The State disputes this figure, conceding, however, it did challenge six negroes. The record does not reflect how many prospective negro jurors were actually challenged by either the State or the defense.

▬▬▬ The State and Federal Constitutions do not mandate a bi-racial petit jury. See State v. Goree, 245 La. 389, 158 So.2d 203, and the authorities cited. The motive for a peremptory challenge is speculative and beyond the scope of judicial inquiry. That the State used some of its peremptory challenges to excuse prospective negro jurors is no ground for a mistrial. State v. Clark, 242 La. 914, 140 So.2d 1, appeal dismissed, cert. denied 371 U.S. 222, 83 S.Ct. 311, 9 L.Ed.2d 273.

The trial judge correctly overruled the motion for a mistrial.

*BILLS OF EXCEPTIONS NOS. 34, 40: Evidence of Rape of Victim by Defendants Other than Percy James Anderson.*

▬▬▬ In his opening statement, the District Attorney described the rape, indicating that two defendants would guard the victim's escort while the others were with the victim and, by rotating the guard, each of the defendants was with her at some time. The defendants objected on the ground the indictment alleged that Anderson had committed a physical act of rape and the other defendants were charged as principals based on that act. The defendants likewise objected to evidence that anyone other than Anderson had actually raped the victim.

The trial judge overruled these objections, allowing all the circumstances of the rape to be described to the jury.

The trial judge correctly admitted the evidence. The other physical acts of rape were part of the res gestae. They occurred at the same time and place as the principal act and formed part of the same transaction. See State v. Palmer, 227 La. 691, 80 So.2d 374.

*BILLS OF EXCEPTIONS NOS. 70, 71, 72, 73, 74, 75, 79, 80, 90, 91, 92, 93, 94: Oral Statements of Defendants.*

The defendants objected to the admission of oral statements of the defendants.

to the police officers on various grounds, that they were hearsay, that they were not shown to be voluntary, and that the District Attorney failed to give written notice of their intended use as required by Article 768 of the Louisiana Code of Criminal Procedure.

As we have already noted, the record reflects the statements made to the police officers were voluntary. No elaboration on this finding is required here.

▬▬ It is well established that incriminating statements of a criminal defendant are admissible in evidence against him. Such statements are not subject to exclusion as hearsay. State v. Faciane, 233 La. 1028, 99 So.2d 333; State v. Roshto, 222 La. 185, 62 So.2d 268; State v. Lyons, 113 La. 959, 37 So. 890.

Article 768 of the Louisiana Code of Criminal Procedure provides:

"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."

In compliance with that Article, the State gave the defendants the following notice:

"[T]he State of Louisiana intends to introduce in evidence each and every confession and statement of each and everyone of these defendants, *whether same be oral* or recorded (and later transcribed into writing) or written, and whether inculpatory or exculpatory, particularly *BUT NOT LIMITED TO* the following statements:" (Italics ours.)

The oral statements objected to were not among those described in detail.

In State v. Palmer, 251 La. 759, 206 So. 2d 485, this Court upheld a written notice "that on the trial of this case the State of Louisiana intends to introduce in evidence certain oral inculpatory statements made by the accused to investigating officers."

▬▬ The present notice apprises the defendants of the State's intention to introduce oral confessions and statements. The notice, in our opinion, substantially complies with Article 768 and permits introduction of the statements.

*BILL OF EXCEPTIONS NO. 101:*
*Line-up Identification Instruction*

▬▬ The defendants reserved this Bill to the refusal by the trial judge to give Special Charge No. 3 submitted as follows:

"You are charged that police lineups are entirely proper for the purpose of a prosecuting witness making an identification. However, if you find that any witness identified any defendant as a result of the lineup in which a defendant was required to repeat words allegedly

similar to words used during the commission of the crime charged and the utterance of such words by a defendant led to or aided in the identification, then you should disregard such testimony regarding such identification."

The charge was based upon Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). These decisions were handed down on June 12, 1967. They are not retroactive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Hence, the decisions cited are inapplicable, and we need make no further inquiry into the refusal to give the charge.

The trial judge properly refused the instruction.

## BILL OF EXCEPTIONS NO. 102: Refusal of Special Charge to the Jury.

Defendants reserved this Bill to the refusal of Special Charge No. 5, which reads as follows:

"You are charged that where the investigation by the police is no longer a general inquiry into an unsolved crime, has begun to focus on a particular suspect, the suspect must be warned in clear and unequivocal language, prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law; that he must be clearly informed that he has the right to consult with a lawyer and have the lawyer with him before and during any interrogation, and that if he is without means to do so, a lawyer will be appointed to represent him before any questions are asked of him."

"Any confessions or admissions obtained by the police without these safeguards violate the privilege against self-incrimination, and are not the product of free choice."

The foregoing instruction concerns the omission of the four-fold warning required by Miranda v. Arizona. In essence, it relates to the admissibility of the confession in evidence. If the prescribed warning had been omitted, as assumed in the instruction, the confession would have been inadmissible for any purpose.

▬▬ A determination of the admissibility of a confession lies within the exclusive province of the trial judge. Once the trial judge rules the confession admissible, the jury has no authority to reject it as incompetent. State v. Simpson, 247 La. 883, 175 So.2d 255; State v. White, 247 La. 19, 169 So.2d 894.

It is true the jury must determine the weight to be accorded to a confession. In so doing, it considers all the surrounding circumstances. The judge, however, fully instructed the jury on this function in the general charge.

Article 807 of the Code of Criminal Procedure provides:

"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."

▮▮▮ The foregoing charge, in our opinion, confused the roles of judge and jury. Hence, the trial judge properly declined to give it.

*BILL OF EXCEPTIONS NO. 103: Overruling of Motion for a New Trial.*

On April 7, 1967, the trial court overruled Arthur Lee Washington's motion for a new trial, and the defendant reserved a Bill of Exceptions.

In the motion for a new trial, Washington reurged the questions raised in all previous Bills of Exceptions and further alleged:

"The verdict of guilty returned against the defendants is contrary to the law and the evidence and there is no legal evidence of defendants' guilt except for the identification made by [the victim] and Perry Stacks, both of which were inconsistent with sworn testimony given prior to trial."

▮▮▮ This Court does not review the facts in a criminal case. Art. VII, Sect.

10, La.Const. Hence, the motion for a new trial presents nothing further for review.

▮▮▮ In connection with the motion for a new trial, defendants suggest in their brief that several jurors were excused because of a general objection to capital punishment. They rely upon the recent case of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The motion for new trial contains no allegation of error as to this phase of jury selection, and no bills of exceptions were reserved as to it during the trial. Hence, there is no basis in the record for invoking the doctrine in the present case. Art. 920, C.Cr.P.

*BILL OF EXCEPTIONS NO. 106: Denial of a Verbatim Transcript of the Entire Trial.*

The defendants reserved a Bill of Exceptions when the trial judge refused to order the court reporter to furnish the indigent defendants "a full and complete transcript including all of the testimony, oral arguments, and other matters which were recorded by the court reporter."

The court reporter did furnish the evidence and proceedings relating to all Bills of Exceptions.

▮▮▮ In Louisiana, an appeal in a criminal case is only on questions of law. The Supreme Court is without jurisdiction to review the facts. Art. VII, Sect. 10, La.

Const. Here the evidence attached to the Bills of Exceptions provides a full base for appellate review. No verbatim transcript is required, nor would this court review it if it had been transmitted. State v. Mack, 243 La. 369, 144 So.2d 363; Mack v. Walker, 5 Cir., 372 F.2d 170.

In Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899, the United States Supreme Court stated:

"In considering whether petitioners here received an adequate appellate review, we reaffirm the principle, declared by the Court in Griffin, that a State need not purchase a stenographer's transcript in every case where a defendant cannot buy it. * * *"

"* * * the fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the State must waste its funds by providing what is unnecessary for adequate appellate review."

We conclude the Bill of Exceptions lacks merit.

We have examined all remaining Bills of Exceptions referred to in defendants' brief, especially Bills of Exceptions Nos. 27, 28, 29, 30, 31, 33, 78, 95, and 97. These pertain to routine questions arising during the course of the trial and disclose no reversible error. In our opinion, Percy James Anderson, Arthur Lee Washington, and John Henry Robinson have been accorded a fair trial. Their appointed counsel have performed their duty in the highest traditions of the legal profession.

Because of the erroneous admission of his confession, we must reverse the conviction and sentence of Hubert Breda.

For the reasons assigned, the conviction and sentence of Hubert Breda are reversed and set aside, and his case is remanded for a new trial. The convictions and sentences of Percy James Anderson, Arthur Lee Washington, and John Henry Robinson are affirmed.

BARHAM, Justice (dissenting).

I dissent, finding merit in Bills of Exception Nos. 24, 25, 26, 66, 67, 68, and 69. I stated in dissent in State v. Hopper, 253 La. 439, 218 So.2d 551 (1969), that the harmless error rule should not apply to the admission of the confession of a codefendant. I must dissent further in the case at hand because it presents another and more complicating problem involving this same general principle of law. I stated in Hopper, supra, and I now find in the present case, that this court is applying the *incorrect* harmless error doctrine. The majority here and in Hopper cited Code of Criminal Procedure Article 921, which gives our Louisiana harmless error rule. Under United States Supreme Court decisions that rule is inapplicable to violations of federal constitutional rights, and as I will

show, the majority has failed (was even unable) to follow and apply the correct—that is, the federal—harmless error rule.

Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, which was decided after our Hopper case, reaffirmed Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, in holding that the confession of a defendant is inadmissible in evidence when he is jointly tried with another, but it further held that the admission of such illegal or tainted evidence may constitute harmless error in particular cases. Harrington also reaffirmed the rule set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, in which the Supreme Court refused to allow a state to apply its harmless error standard and said that the admission of evidence which violates a federal constitutional right can be ruled harmless error only *under the federal standard for harmless error*, and the federal standard was there defined.

The federal harmless error doctrine, its evolution, and its change may be set forth by quoting pertinent statements from several United States Supreme Court decisions.

"* * * While this Court does not sit as in nisi prius to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, *make an independent examination of the facts, the findings, and the record*

*so that it can determine for itself whether in the decision as to reasonableness the fundamental—i.e., constitutional—criteria established by this Court have been respected. * * *"* Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, 738. (All emphasis supplied.)

"* * * *The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. To decide this question, it is necessary to review the facts of the case and the evidence adduced at trial.*" Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, 173.

The dissent in Fahy interprets the majority holding: "* * * In any event, the standard applied here required *a determination that exclusion of the unconstitutional evidence could not have changed the outcome of the trial. * * *"* 84 S.Ct. 234, 11 L.Ed.2d 178.

"* * * *We, therefore, do no more than adhere to the meaning of our Fahy Case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare that it was harmless beyond a reasonable doubt. * * *"* Chapman v. California, supra, 87 S.Ct. at p. 828, 17 L.Ed.2d at p. 710.

"We do not depart from Chapman; nor do we dilute it by inference. We reaffirm it. * * * *The case against Harrington was not woven from circumstantial evi-*

*dence. It is so overwhelming* that unless we say that no violation of Bruton can constitute harmless error, we must leave the state conviction undisturbed." Harrington v. California, supra, 89 S.Ct. at pp. 1728–1729, 23 L.Ed.2d at p. 288.

The dissent in Harrington states: "The Court holds that constitutional error in the trial of a criminal offense may be held harmless *if there is 'overwhelming' untainted evidence to support the conviction. * * * The focus of appellate inquiry should be on the character and quality of the tainted evidence as it relates to the untainted evidence and not just on the amount of untainted evidence."* 89 S.Ct. 1729, 23 L.Ed.2d 289.

From all the verbiage, seeming contradictions, and vacillations of these decisions there emerge at least four requirements which must be met by a court of review in its determination of whether a federal constitutional violation may be deemed harmless error in a particular case. First and most obvious, the reviewing court must make an independent examination of all of the facts, the findings, the testimony, the complete record of the trial court. Second, the reviewing court, excluding from its mind the tainted or illegally admitted evidence, must determine from its examination of the complete record whether the untainted —that is, admissible—evidence overwhelmingly supports a finding of the guilt of the accused. Third, the reviewing court must

come to a conclusion that the constitutional error was "harmless beyond a reasonable doubt", had no effect upon the untainted evidence, no effect, cumulative or otherwise, upon the jury's determination of guilt, and in no way contributed to the conviction. And finally, the burden of proving beyond a reasonable doubt that such a violation is harmless error rests upon the party who benefited from the constitutional error—the State of Louisiana here.

It is apparent at first glance that there is a great difference in this federal doctrine and the Louisiana harmless error rule. The state harmless error rule rejected in Chapman, supra, was California Constitution, Article 6, Section 4½, requiring that the error complained of has not "resulted in a miscarriage of justice", which is identical to part of the language of our Code of Criminal Procedure Article 921 (former R.S. 15:557). Although we had and still have additional language in our statutory rule for harmless error, including the phrase "after an examination of the entire record", under this statute this court has refused to review all the facts, the testimony, and the complete record to determine guilt or innocence or the effect of the tainted evidence or to pass upon the sufficiency of the evidence. Indeed, because of the limitation of our review to perfected bills of exception and patent errors we seldom have before us the com-

plete record of the trial proceedings and therefore cannot review the evidence in every case or even in most cases.

One reason for my dissent and call for reversal of convictions in the Hopper case, as well as the primary basis for my dissent here, is that we are bound by our state constitutional limitation of review to questions of law in criminal cases and are therefore powerless to apply the federal harmless error standard which requires, among other things, a review of all the evidence for a determination of whether the admissible evidence "overwhelmingly" or "beyond a reasonable doubt" supports the verdict of guilty. The majority states this principle very succinctly under its discussion of Bill of Exception No. 106 and uses it as a basis for refusal of "a full and complete transcript", saying: "In Louisiana, an appeal in a criminal case is only on questions of law. The Supreme Court is without jurisdiction to review the facts. Art. VII, Sect. 10, La.Const. Here the evidence attached to the Bills of Exceptions provides a full base for appellate review. No verbatim transcript is required, *nor would this court review it if it had been transmitted.* \* \* \*" (Emphasis supplied.)

The United States Supreme Court has required only that *if* we look for harmless error, we must meet the minimal requirements of the federal rule; but we may be more strict in determining whether the error is harmless, or we may even reject the concept of harmless error and simply reverse. We must comply with Bruton and the United States Constitution, but we are also constrained to apply our own constitutional provision limiting our review to questions of law. We must choose one of two courses. We may demand that no confessions of codefendants be used in joint state prosecutions and reverse upon such an admission because it denies the federal as well as the state constitutional right of cross-examination and confrontation. The alternative is to judicially create machinery whereby our court may review the full record for a determination of whether the error is harmless under the federal standard; and the majority apparently agrees with me that such a factual determination by this court of the sufficiency of the evidence to sustain the guilt of the accused contravenes the Louisiana Constitution.

The majority opinion is contrary to the holding in Harrington v. California, supra, for it has held that mere similarity in confessions of codefendants, in and of itself, makes their admission in every case harmless error.[1] The majority has not applied

1. The majority holding is:
   "Although there is a variation in the details of the four confessions, all coin-

cide on the salient point: acting in concert, the four defendants raped the victim in succession. None of the confes-

the federal harmless error doctrine (and could not apply it because the complete record is not before us), and yet it does not reverse. Under Bill of Exception No. 106 these very defendants have complained that they were denied the privilege of a complete transcript of testimony, and the majority not only has declared that they are not entitled to this complete record but has stated that this court would refuse to review such a record if it were before us. The majority's position of finding harmless error in this case without a complete record and at the same time refusing to require or review a complete record is untenable and contrary to the United States Supreme Court jurisprudence upon which it relies.[2]

Under the record before us there is no evidence independent of the several confessions of the defendants to sustain these verdicts, and we must reverse.

To sum up, we cannot apply the Louisiana harmless error rule without disregarding positive United States Supreme Court decisions; and we cannot follow the federal harmless error rule without contravening our own Louisiana Constitution. I would resolve this dilemma by following our state constitutional requirement in review of criminal cases, and therefore I would adhere to my dissenting opinion in State v. Hopper, supra, that when a codefendant's confession is to be used, there must be a severance, and that if a codefendant's confession is used in a joint trial, we must reverse. Regardless of my preference, this court will eventually have to make some determination other than a finding that mere similarity of codefendants' confessions makes their introduction into evidence in a joint trial harmless error.

sions absolves either the confessor or any of his co-defendants.

"The harmless error rule applies to the use of such confessions at a joint trial. Art. 921, C.Cr.P.; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); State v. Hopper, 253 La. 439, 218 So.2d 551 (1969).

"We find no substantial conflict in the confessions. Hence, assuming error in the ruling of the trial judge admitting the confessions at the joint trial, it was harmless beyond a reasonable doubt."

2. The voluminous record before us contains very little of the testimony given before the jury in regard to the guilt of the defendants. Our record consists in the main of testimony presented out of the presence of the jury on motions to suppress and other matters triable before

the judge alone. There is no evidence in the record before us to sustain the guilt of the defendants under the perfected bills of exception except the confession of each of them. The majority has found harmless error merely upon the review of these confessions. Not only is there a lack of "overwhelming" evidence, but there is no other evidence of guilt of any of the defendants in the record before us. This is not to say that in testimony before the jury such evidence was not elicited and presented; it simply is not before us for review. It should be noted that for us to reverse on a sparse record in a case such as this one and to find harmless error and affirm in another case where the complete record is before us under perfected bills of exception might well be a denial of equal protection.

If the majority opinion stands, our trial courts and the State may well be led to compound error so as to affect many other defendants, and federal intervention will follow with greater disadvantage to our system of criminal justice.

I respectfully dissent.

FOURNET, C. J., dissents from refusal of a rehearing to both applications.

BARHAM, J., dissents from a refusal to grant rehearing with respect to defendants' application.