On January 16, 1935, the accused, at one and the same time, or, to be more accurate, in immediate succession, killed one woman, fatally wounded another, shot a third in the neck, and then shot himself. The two women who died from the effect of the pistol shot wounds inflicted upon them by the accused were Mrs. Wilhemenia Kelly Jackson, also known as Mrs. Minnie Jackson, and Mrs. Annie May Kelly Cresap.
The grand jury returned true bills against the accused for the murder of each of said women. The accused was arraigned upon the indictment charging him with the murder of Mrs. Wilhemenia Kelly Jackson, also known as Mrs. Minnie Jackson. He pleaded not guilty. Counsel was appointed, by the court, to represent him, the case was tried, the jury returned a verdict of "guilty as charged," a motion for a new trial was filed, heard, and overruled, a motion in arrest of judgment was also filed and overruled, and the accused was sentenced "to be hanged by the neck until he be dead on such date as the Governor of the State of Louisiana shall appoint in his warrant."
The accused appealed from the verdict and sentence, and he relies upon six bills of exception, two of which were reserved preliminary to the actual trial, two during the trial, and two after the conclusion of *Page 517 
the trial and the entry of the verdict of the jury in the minutes of the court.
 Bill No. 1.
This bill was reserved to the overruling of the accused's motion for the appointment of a lunacy commission to inquire into the mental status of the accused at the time of the homicide and at the time of the trial. This bill contains the following recitals:
"That the said Criminal District Court for the Parish of Orleans, Section `A' erred in refusing to grant defendant and appellant herein, his motion to retract his former plea of `Not Guilty,' * * * and in lieu thereof to file a motion for the appointment of a `Commission de lunatico inquerando' based upon certified copies of reports and records from the Charity Hospital."
With respect to the alleged refusal of the trial court to permit the accused to withdraw his plea of not guilty and to file his motion for the appointment of a lunacy commission, counsel for defendant is in error. The record shows that the plea was withdrawn, that the motion was filed, heard, and overruled, and the defendant was rearraigned, and his second plea was noted before the trial actually began. We quote the following from the minute entry, page 2 of the record:
"June 27th, 1935. Withdrew plea of not guilty and filed motion for the appointment of a Lunacy Commission, and said motion for the appointment of a Lunacy Commission *Page 518 
denied. Accused re-arraigned and pleaded Not Guilty."
Whether or not this bill has any merit must be ascertained from the facts which were submitted to the trial judge in support of the motion. The bill itself recites that the motion of the accused was submitted to the judge solely upon certified copies of reports and records from the Charity Hospital. These merely show the location and actual character of the wound the defendant inflicted upon himself. Nowhere in said reports and records is there any suggestion that the accused was insane at the time of the homicides or at any time thereafter. It is shown that immediately after the accused shot himself he lost consciousness for about twenty minutes, but thereafter, and up to the date of his trial, all of his recorded statements are clear, cogent, and as sane as usually emanate from a fairly well mentally balanced mind. It would serve no useful purpose to quote the physicians' reports and the hospital record. The trial judge, in his per curiam, has quoted them, but, inasmuch as they fail to show a discoverable taint of insanity, we fail to see wherein there is merit in this bill. The trial judge's ruling thereon is correct.
 Bill No. 2.
This bill was reserved to the overruling of the defendant's objection to the district attorney, in his opening statement to the jury, reading to the jury the written confession of the accused, made in the Charity Hospital to the officers who had *Page 519 
him in custody, and in the presence of other persons, including a newspaper reporter. The judge's per curiam to this bill is as follows:
"The subject-matter of this bill was settled decisively by your Honors in the recent case of State v. Silsby, 176 La. 727,146 So. 684."
Article 333 of the Code of Criminal Procedure is mandatory upon the district attorney. It requires him, in criminal jury trials, to make an opening statement to the jury. He must, in his opening statement, explain the nature of the charge and the evidence by which he expects to establish it. The article is as follows:
"Art. 333. The jury having been impaneled and the indictment read, the trial shall proceed in the following order:
"The reading of the plea to the jury; the opening statement of the District Attorney explaining the nature of the charge and the evidence by which he expects to establish the same; the opening statement by counsel for the defendant at his option explaining the defense and the evidence by which he expects to prove the same; the introduction by the District Attorney of all the evidence upon which he relies for a conviction; the introduction by the defendant of all of his evidence; the introduction by the District Attorney of the rebuttal evidence; the argument of the District Attorney of those matters upon which he relies for a conviction; the argument by the defendant or by his counsel; the reply by the District Attorney to the argument of the defense; the judge's *Page 520 
charge to the jury; the retiring of the jury under the custody of the sheriff; the rendition of the verdict or the entry of a mistrial, as the case may be; the discharge of the jury."
In the Silsby Case, the majority of the court held that, because the district attorney, in his opening statement, did not tell the jury that one of the elements of proof he proposed to offer on the trial of the case was a confession made by the accused, the trial judge committed reversible error later in admitting the confession, over the defendant's objection, as a part of the state's evidence against the accused. In this case the district attorney is not charged with laches. On the contrary, he is charged with reading the defendant's confession to the jury before it was offered or admitted in evidence. This would certainly have been reversible error if the confession, when offered, had been excluded by the court, but in this case it was admitted. Hence defendant's case was not prejudiced thereby. Courts are not warranted in reversing verdicts except where error prejudicial to the defense occurs.
 Bill No. 3.
This bill was reserved to the overruling of defendant's objection to the admission of his confession in evidence. It is not pretended that the confession was not a free and voluntary one. The objection is as follows:
"By Mr. Maloney: — We object on the ground that this defendant had a bullet in his head, his eye was shot out, and that he *Page 521 
was incapable at that time on account of the pain he was suffering, to make an intelligent statement."
This is merely the unsupported statement of defendant's counsel. It does not question the proof offered as a basis for admitting the confession nor does it question the mentality of the accused. It merely alleges that the accused was suffering great pain at the time the confession was made.
 Bill No. 4.
This bill was reserved to the overruling of defendant's objection to the court permitting the state to place a witness on the stand, in rebuttal. The accused, while on the stand, in his own behalf, had testified that he had given May Kelly, one of the women he is charged with killing, everything he had, and from these gifts she had saved approximately $5,000, and that the defense would prove that fact by the records of May Kelly's succession. In rebuttal of this testimony, which was brought out by the defendant, the state called the secretary of a local homestead, who testified that May Kelly had $5,000 on deposit with his homestead at a date long prior to her meeting the accused, and that she withdrew this money prior to meeting him. We fail to see wherein this testimony could have any weight in determining the guilt or innocence of the accused. If the judge erred in permitting it to go to the jury, which we think is doubtful, the error was a harmless one, and therefore the bill is without merit. *Page 522 
 Bill No. 5.
This bill was reserved to the overruling of defendant's motion for a new trial. The motion for a new trial is based upon the four bills of exception which we have already disposed of. In addition, the mover alleges that the court erred in amplifying its charge to the jury on the law of manslaughter when the jury returned into court and asked for further instructions on that subject. No exception to any part of the charge was noted at that time, and the jurisprudence is stare decisis that it is too late to question any part of the charge in a motion for a new trial. The same may be said of other allegations in the motion for a new trial respecting the recharge of the jury at their request.
 Bill No. 6.
This bill was reserved to the overruling of defendant's motion in arrest of judgment. The motion is based solely upon the alleged errors contained in the several bills of exception which we have disposed of supra. There is no error patent on the face of the record, and therefore the verdict and sentence are correct, and they are affirmed.
O'NIELL, C.J., dissents from the rulings on bills 1, 2, and 3, being of the opinion that the evidence, and particularly the circumstances surrounding the defendant's shooting of the three women and himself, show that the defendant was insane; the CHIEF JUSTICE being of the opinion *Page 523 
also that the district attorney should not have read the confession to the jury before it was shown to be admissible in evidence.
ROGERS, J., dissents from the rulings on bills Nos. 1, 2, and 3.