**Roy Allen CLOUD**

v.

**STATE OF LOUISIANA.**

**Civ. A. No. 12794.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

Jan. 19, 1971.

**134**

Kenneth Perrell Fuselier, Oakdale, La., and Edward A. Kaplan, Court-Appointed Atty., Alexandria, La., for plaintiff.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., Edwin O. Ware, Dist. Atty., 9th. Judicial District Attorney, and Robert P. Jackson, Asst. Dist. Atty., Alexandria, La., for defendant.

### MEMORANDUM OPINION

PUTNAM, District Judge.

Petitioner, Roy Allen Cloud, was found guilty of the crime of armed robbery on November 20, 1963, in the Ninth Judicial District Court of Louisiana, Rapides Parish, Criminal Docket No. 55934. On December 11, 1963, he was sentenced to serve a term of imprisonment of fifteen years at hard labor. An appeal was taken and the conviction affirmed. See State v. Cloud, 246 La. 658, 166 So.2d 263 (1964). He now seeks habeas corpus.

Subsequently, petitioner was charged in the same court, criminal docket No. 57767, with the crime of aggravated escape, to which he entered a plea of guilty. On May 13, 1964, he was sentenced to serve seven years at hard labor on this charge, this sentence to run consecutively with that imposed in No. 55934. After the first case was affirmed on appeal in July of that year, his sentences totalled twenty-two years.

Petitioner's first application to this court was denied on June 1, 1967, which ruling was set aside and reversed, because of the intervening decision of the United States Supreme Court in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20

L.Ed.2d 426 (1968). See Cloud v. State of Louisiana, 397 F.2d 252 (5th Cir. 1968).

On November 26, 1969, we held that State remedies had not been exhausted, and directed petitioner to proceed under State post conviction procedures. In response, he filed an application for a writ of habeas corpus with the Ninth Judicial District Court of Louisiana to meet this requirement. Among various other grounds, he contended that (1) he had been denied a transcript of the evidence in his case, contrary to the decisions of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and United States ex rel. Weston v. Sigler, 308 F.2d 946 (5th Cir. 1962); (2) that his court-appointed counsel was ineffective, (3) that there was misconduct on the part of court attendants and jurors during his trial, (4) the trial judge erred in refusing petitioner's request for the appointment of new counsel made during the trial, (5) that two statements made by him and introduced into evidence were given while he was under the influence of drugs and not voluntary, (6) the trial judge instructed the jury when they requested an additional explanation of the law on confessions in a manner prejudicial to him (although he does not specify any error in the instructions so given), (7) that the conviction was illegal and not supported by any evidence because a 25 caliber pistol allegedly used in the robbery on May 28, 1963, had been pawned by him on the *morning* of that day as shown by the receipt given to him by a Mr. W. R. Hargrove, who loaned him $5.00 on the weapon, and (8) a host of miscellaneous actions attributed to court, counsel and attendants at the trial which he considers to be violative of his constitutional rights to due process and equal protection of the laws.

The State Court, refusing to avail itself of the opportunity afforded it by 28 U.S.C.A. § 2254(d) to protect its processes, did not grant an evidentiary hearing, but dismissed the application on its face. It is unfortunate that this procedure was followed, for State Courts

whose trials are attacked for constitutional taint are in a far better position than are the federal courts, to which recourse inevitably follows, to judge the performance of trial counsel, separate trial tactics and strategy from ineffective representation or deliberate by-passing of state remedies, and to evaluate other factual contentions made by state prisoners in these applications which can only be decided after hearing evidence. This being the case, this court was required to hold an evidentiary hearing, and to review such portions of the trial record as are available at this late date to resolve these issues. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

We appointed Mr. Edward Kaplan of the Alexandria bar to represent petitioner, a new petition was filed and an evidentiary hearing was held in Alexandria on April 30, 1970, at which Cloud attended. At this hearing Mr. Kaplan was joined by Mr. Perrell Fuselier, an attorney of Oakdale, Louisiana, who had been retained by petitioner's family. The evidence consisted of the transcribed testimony taken on the question of guilt or innocence at the former trial, produced by the State in response to our orders previously issued, the record as made up in the original trial with all bills of exceptions, motions, etc., for petitioner's appeal to the Louisiana Supreme Court, and the testimony of the official court reporter at that trial who identified the transcript, the deputy clerk of court, Mr. Richard; Dr. M. V. Hargrove; the attorney who represented

plaintiff at the trial; Deputy Sheriff Walter Reynolds, and Mr. Leon Smith, who assisted the Sheriff's department in making the arrest. Mr. W. R. Hargrove, who allegedly loaned Cloud $5.00 on the 25 caliber pistol introduced into evidence in this case, was dead at the time of the hearing.

The bill of information filed in this case charged that petitioner and two others, Garland Bates and Robert Willis, " *   *   * while armed with a dangerous weapon, to wit: a pistol, robbed Roy Spera  *   *   * " on May 28, 1963. The accused was arrested by officers from Rapides and Allen Parishes, on July 20th. He was arraigned on October 23, 1963, at which time counsel was appointed to represent him and a plea of not guilty was entered. Bates and Willis, his co-defendants, entered guilty pleas to this and/or other charges against them and were not tried with Cloud. They were not called to testify by the State or by the defense. On November 18, the morning set for trial, petitioner's counsel filed a motion for the appointment of physicians to inquire into the sanity of the accused at the time of trial and at the time of commission of the offense, pursuant to the statutes then in effect. LSA–R.S. 15:267, 268 and 269.[1] On the same morning, after hearing defendant's witnesses, the Court denied the motion, found Cloud to be then capable of understanding the charges against him and of assisting in his defense, and ordered the trial to proceed. The evidence introduced at this hearing was not transcribed and is not in the record. No bill of exceptions was reserved to the ruling of the court.[2] The accused, through his

1. These articles provided for the appointment of physicians by the court as a discretionary matter. Although the failure to appoint physicians was subject to appellate review, cases cited infra, page 136, reflect that such discretion was seldom, if ever, disturbed. By Act 300 of 1966 the Louisiana Code of Criminal Procedure was revised, effective Jan. 1, 1967. The present procedural devices are set forth in LSA-Code Crim. Proc. Title XXI, Chapters 1 and 2, Articles 641 et seq.

2. In order to preserve a record for appellate review, it was necessary pursuant to LSA 15:498 et seq., to make a contemporaneous objection and formally except to the overruling thereof by the trial court. These provisions were changed by Act 310 of 1966, supra, and present procedure, substantially the same, is found in LSA Code Crim.Proc., Title XXVIII, Arts. 841 et seq.

court-appointed counsel, entered a plea of not guilty by reason of insanity.

From evidence introduced during the trial, a transcript of which is before us, we assume that the evidence taken at this hearing was to the effect that Cloud was struck on the head with a baseball bat in childhood and had suffered from personality changes and emotional disturbances since then. Dr. M. V. Hargrove, his treating physician, testified that his opinion was that he had epilepsy not accompanied by severe convulsions, characterized by him as "petit mal", and that he was kept under medication for this condition. He also expressed the opinion that Cloud was extremely depressed at times, and experienced intervals when he did not know what was going on.

It was brought out that he had at one time been committed to the Central Louisiana State Hospital for the Insane, at Pineville, but had escaped from that institution before any diagnosis could be made. The medication prescribed by Dr. Hargrove consisted of dexamyl, a central nervous system stimulant (one of the amphetamines), or "pep" pill, and nembutal, a hypnotic drug of the barbiturate family, and a depressant. These drugs, taken in excessive doses, are capable of rendering a person unaccountable for his action, according to the medical testimony, but if taken in such quantities the condition would be readily apparent and the victim rendered almost unconscious. The parish coroner, Dr. Owen, testified that in his opinion Cloud was capable of understanding the proceedings against him and that there was nothing to indicate that he was insane at the time the crime was committed on May 28, 1963. (State transcript, p. 137, et seq.)

██ Cloud does not now maintain that he was or is insane. But the appointment of a lunacy commission under the provisions of LSA–R.S. 15:267, et seq., while addressed to the discretion of the trial judge, was subject to appellate review under the law of this State. The rule is the same in respect to a plea of present insanity and insanity at the time of the offense. State v. Cannon, 184 La. 514, 166 So. 485 (1936), cert. den. 299 U.S. 503, 57 S.Ct. 13, 81 L.Ed. 373; State v. Bentley, 219 La. 893, 54 So.2d 137 (1951); State v. Winfield, 222 La. 157, 62 So.2d 258 (1953); State v. Johnson, 226 La. 30, 74 So.2d 402 (1954); State v. Yaun, 237 La. 186, 110 So.2d 573 (1959); State v. Graves, 247 La. 683, 174 So.2d 118 (1965). The failure to reserve a bill of exceptions at the time of the denial of the motion and to have the evidence introduced at the hearing transcribed, left nothing for appellate review. This fact gives us pause because of the persistent charges that counsel was ineffective. Considering the evidence available on this point, however, and the fact that the motion was not filed until the day of trial, under the cases cited above it is a virtual certainty that the Louisiana Supreme Court would have affirmed the decision of the trial court.

Again, when the State was laying the foundation for a confession given by the accused on July 20, 1963, outside of the jury's presence, no evidence was introduced by the defense to show Cloud's mental condition at the time or that he was in a drugged condition when questioned as he now maintains. Under Louisiana law, the accused himself could have taken the stand for the limited purpose of testifying on the admissibility of the statement, outside of the jury's presence. State v. Thomas, 208 La. 548, 23 So.2d 212 (1945). *Cloud did not testify then, and at evidentiary hearing in this court he refused to testify on this or any other point urged by him in his application.*

The trial judge expressly pointed out to counsel for the accused that there was no evidence before him to show that Cloud was "addicted" to drugs or under the influence of drugs at the time this confession was taken, and that the evidence heard that morning on the motion

for a sanity commission was not evidence at the trial. He then offered the defense the opportunity to place any such evidence before him at that time. Defendant's counsel started to do so, then thought better of it and deliberately passed the opportunity, knowing that the confession would be ruled admissible (State transcript, pp. 44, 45). This matter of trial strategy was a decision made by counsel during the heat of the trial, and one for which we can ascribe a logical reason. The trial judge had already heard this evidence and ruled against Cloud on the motion filed that morning. In view of this, his ruling on the admissibility of the confession could reasonably have been anticipated to be favorable to the State. On the other hand, all of the evidence was admissible in connection with the plea of not guilty by reason of insanity, and it could be and was placed before the jury for their consideration in determining the effect or weight to be given to the confession in question.

Further, petitioner's counsel fully exploited this position by his cross-examination of the three officers present when the confession was taken when they testified in the presence of the jury prior to the introduction of the statement into evidence, and by his objections made in the presence of the jury that the accused was under the influence of drugs when it was given. (State transcript, pp. 91, 92)

■ Not only does this court conclude that the failure to reserve bills of exception to the admission of this statement at the time of the trial did not amount to ineffective assistance of counsel, we make our own independent determination from the evidence given at the evidentiary hearing on April 30, and from a thorough review of the recorded testimony at the State trial, that petitioner Cloud was not under the influence of drugs at the time the admission was made, and that it was a free and voluntary act on his part, made with full understanding of its import.

■ The remaining accusations leveled by the petitioner against his attorney do not warrant discussion. He has also expressed dissatisfaction with his present attorneys, prior to and during the hearing afforded him. But, in order to prevail in the claim that his court-appointed counsel was ineffective, the settled jurisprudence in this circuit is that petitioner bears the burden of proving by a preponderance of the evidence that counsel's competence, or lack of it, or his performance at the trial was of such magnitude as to shock the conscience of the court and reduce the state court proceedings to a farce, a mockery of justice, or a sham. King v. Beto, 429 F.2d 485 (5 Cir. 1970); Foster v. Beto, 412 F.2d 892 (5 Cir. 1969); Brown v. Beto, 377 F.2d 950 (5 Cir. 1967); Williams v. Beto, 354 F.2d 698 (5 Cir. 1965). And, as stated in MacKenna v. Ellis, 280 F.2d 592 (5 Cir. 1960), counsel does not mean "errorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." Plaintiff has failed to carry this burden in any respect.

■ Cloud further assigns as a violation of his Sixth Amendment right to counsel, the fact that he requested the trial judge to delay the case and appoint another attorney for him, which request was refused. A review of the transcribed record shows that no reasons were advanced for the change, and in our opinion, considering the effort of appointed counsel in his client's behalf up to that point, there was no justification for the request. (State transcript, p. 52). The action of the trial court in this respect was not by any standards, such as to amount to a deprivation of any rights secured to this accused by the Constitution of the United States or any of its Amendments.

Petitioner's most serious contention is that the State failed to furnish him with

a transcript of all of the evidence in the case. The trial judge states in his reasons for denying the writ of habeas corpus that no request for a transcript was made by petitioner or his counsel. The Louisiana Supreme Court found no such request in any form in the record sent up on appeal, and there is in fact no evidence in that record that a motion was made for a transcript. It is noted, however, that counsel for the accused states in his brief filed in the Supreme Court that he requested a full transcript of the record but was not given same. On April 30, 1970, counsel stated under oath that his recollection was dim and he could not remember exactly, but he did not think he asked for a transcript at the time he reserved his bill of exception to the denial of the motion for a new trial. It was his recollection that he asked the Clerk for a transcript of the evidence at some point thereafter, but that no formal motion had been made.

Counsel did reserve bills of exception to the denial of the motion for a new trial. We have no transcription of what actually took place at the time. The minutes of the court, dated December 11, 1963, constitute the only written account of what transpired, other than the judge's per curiam attached to bill of exception No. 2; neither mentions any part of the transcript being offered as part of the bill. The opinion of the Louisiana Supreme Court in this case, supra, points up the fact under Louisiana law only such matters as are part of the record may be considered on a motion in arrest of judgment, and only such errors as are made to appear by bills of exception taken during the trial may be considered on a motion for a new trial. In this case, therefore, there was nothing for appellate review. 166 So.2d at 266.

■ There is an exception to the rule that an allegation that the verdict is contrary to the law and the evidence, or that there was no evidence in the record to support the verdict, presents nothing

for appellate review. Where the allegation is made in a motion for a new trial that there was no evidence to support the verdict and states with particularity the area in which the proof was lacking on an essential element of the crime in question, the court will consider the entire record to determine whether or not, as a matter of law, the conviction should be set aside. State v. Bueche, 243 La. 160, 142 So.2d 381 (1962); State v. Tarrance, 250 La. 491, 196 So.2d 804 (1967), cert. den. 389 U.S. 941, 88 S.Ct. 299, 19 L.Ed.2d 293, and cases collected in the comment: Right to a Free Transcript in Louisiana Criminal Law, 24 La.Law Review 107, et seq.

■ The applicant's reliance upon Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) as applied to Louisiana practice in United States ex rel. Weston v. Sigler, 308 F.2d 946 (5 Cir. 1962) is misplaced. The rule announced in *Griffin* was clarified by the Court in Draper v. Washington, 372 U. S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), and as a result of the Louisiana procedural requirements applying the contemporaneous objection rule with reservation of a formal bill of exception, as announced in State v. Bueche, supra, the court in Mack v. Walker, 372 F.2d 170 (5 Cir. 1966), greatly modified and restricted the holding in *Sigler*. Because of the constitutional and statutory provisions setting forth the procedures for perfecting a record for appellate review, which are detailed in Mack v. Walker, 372 F.2d at pp. 172, 173 and 174, an accused is not entitled to a free transcript of the evidence in every criminal case as counsel for petitioner Cloud suggests.

But the matter does not end here. In State v. Cloud, supra, it is stated that the fourth ground in petitioner's motion for a new trial was "(4) that the verdict was contrary to the law and the evidence." While this court entertains the highest respect for the Supreme Court of this State, we cannot agree with this statement. Paragraph 4 of the motion

for a new trial filed in this case reads as follows:

"4. That the verdict was contrary to the law and the evidence and particularly the evidence was conclusive that the pistol charged as used in the armed robbery was pawned on the morning of the robbery and could not have been used on the night of the alleged robbery."

This allegation was not considered by the Supreme Court in its opinion on Cloud's appeal. It can only be construed as raising, as a matter of law, the issue of whether or not the evidence-supported proof of an essential element of the crime of armed robbery as defined in LSA–R.S. 14:68, viz: that the State had failed to prove beyond a reasonable doubt that the perpetrators of the crime were armed with a dangerous weapon as charged in the bill of information.

■ Considering the entire record in this case, we must agree with the statement of the trial judge in his reasons for denial of the application for habeas corpus filed there. The question of when the gun introduced by the State was pawned, whether before or after the crime, and whether the receipt showed the correct date or was dated the 28th by mistake, was for the jury. The victim of this robbery, Roy Spera, testified that the men who robbed him were armed and that one of them had a .25 caliber pistol (State transcript, p. 3). The accused himself, in the confession he made on July 20th, stated that he participated in the robbery and that after the event he took the .25 caliber pistol and pawned it to Mr. Hargrove. At best, even if the jury had concluded that this pistol was not the one used in the robbery, the testimony of Spera and Cloud's confession were amply sufficient to establish the corpus delicti.

We find no merit to this application and accordingly, the same is denied.

The State shall present a formal judgment for signature, and judgment shall not be entered by the Clerk until such decree has been signed and filed.