FOURNET, Chief Justice.
 

 The defendant, Emmit Rodgers, alias Joe-Brown, having been charged with “theft of mill screen and heavy copper * * * property of Crown Zellerbach Corporation,”' prosecutes this appeal from his conviction and sentence thereunder, relying on two Bills of Exceptions both of which have their basis in the admissibility of inculpatory statements allegedly made to James I. “Jack” Simmons, yard foreman of the corporation.
 

 The first bill was reserved when the trial judge refused to grant defendant’s motion for a continuance, requested in order that defense counsel might file a motion to suppress the inculpatory statements made by the defendant on the ground that prosecuting-attorney only notified counsel in writing the morning of the trial of the state’s intention to use them. The second was reserved when the trial judge ruled the statements were admissible. We find no merit in. either of these hills.
 

 
 *956
 
 The notice of intention to use the statements was given in strict conformity with the requirements of Article 768 of the new Code of Criminal Procedure (Act 310 >of 1966, effective from January 1, 1967)
 
 [1]
 
 which was intended to protect the defendant from possible prejudicial effect on the jury resulting from mention of such statements in the prosecution’s opening statement although such statements might eventually be ruled inadmissible by the judge, for under prior law the state could not introduce such statements in evidence unless the prosecuting attorney specifically stated this in his opening statement.
 
 [2]
 

 The defense argument under the second bill stems from a reliance on the holding of the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L. R.2d 974, it being asserted the statement was made at a time when the defendant had not been informed of his constitutional right to remain silent, that any statement he made could be used as evidence against him, and that he had a right to an attorney. A consideration of this bill requires a short statement of facts.
 

 The testimony reflects that thefts of metal and material from the Crown Zellerbach Corporation was under investigation by the Bogalusa police and, in connection therewith, officers from this town, apparently alerted to defendant’s involvement, together with “Jack” Simmons, yard foreman of the corporation, who was present for the purpose of identifying the property, and accompanied by a state police officer, were in the yard of a scrap metal company in New Orleans when the defendant drove into the yard with mill screen and heavy copper in the back of his pick-up truck. They saw the material weighed in and the defendant receive payment therefor ($231.96), and then sign a receipt for the money as “Joe Brown.” They thereupon placed him under arrest and took him to State Police Headquarters, later going to a New Orleans precinct where he was booked and turned over to the Bogalusa authorities. The defendant was permitted to drive his truck back to Bogalusa and, at his request,
 
 *958
 
 Simmons accompanied him, the officers following in a separate car. The inculpatory statements objected to were made to Simmons during this ride.
 

 Although the trial judge did not furnish us with a formal per curiam substantiating his ruling on this phase of the case, at the conclusion of the testimony following hearing out of the presence of the jury, he stated orally the statements made to the Bogalusa officers were inadmissible because they had not been the ones to warn him to his rights,
 
 [3]
 
 but that the statements made to Simmons were admissible because the defendant himself “requested to talk to Mr. Simmons and Mr. Simmons rode back with him with the policemen behind him. As far as I know he wasn’t even handcuffed. He was driving his own car * * *. I think he voluntarily drove his car back and voluntarily talked to Mr. Simmons and what he said to Mr. Simmons I am going to let in.”
 

 It is clear from a study of the Miranda decision, as well as from the pronouncements in other landmark cases,
 
 [4]
 
 that the court thereby intended to prevent offensive police tactics being used to produce involuntary confessions and are thus clearly limited, as stated in the Miranda decision, to^ “statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant.” In defining just, what it meant by custodial interrogation, the court said: “ * * *
 
 we mean questioning-initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”
 
 Obviously,, such pronouncement can have no application to admissible confessions, or statements otherwise admissible given to persons who' are not officers of the law. (The emphasis, has been supplied.)
 

 Moreover, it appears from the note of evidence in the record attached to and made a part of Bill of Exceptions No. 3 that the accused was well aware of his rights for during the trial, both in the presence of the jury and outside of the jury’s presence, he denied he had ever made any statements of any kind at the time of his arrest, stating emphatically he was “not supposed to make no statement” unless he first saw a lawyer.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . Article 768 provides: “If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.”
 

 [2]
 

 . As stated by the drafters in comments under Article 769: “Arts. 767 and 768 are an entirely new approach to the problem of reference to a confession in an opening statement. The defendant cannot properly prepare to meet the issue unless he is apprised that the state intends to use the confession. However, there can be no doubt that any mention of a confession to the jury has some prejudicial effect. Arts. 767 and 768 solve both problems by requiring that the defendant be advised of the state’s intention and by prohibiting any reference to a confession before a jury until it is actually introduced.”
 

 [3]
 

 . The state police officer whose assistance was sought in making the arrest, because the Bogalusa policemen were outside their jurisdiction, was ill and not able to testify. As the arresting officer, he was the one who advised the defendant of Ms rights.
 

 [4]
 

 . See, additionally, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; People v. Frank, 52 Misc.2d 266, 275 N.Y.S.2d 570; People v. Santiago, 53 Misc.2d 264, 278 N.Y.S.2d 260; People v. Crabtree, Cal.App., 49 Cal.Rptr. 285; People v. Wright, Cal.App., 57 Cal.Rptr. 781; People v. Hays, Cal.App., 58 Cal.Rptr. 241; State v. O’Kelly, 181 Neb. 618, 150 N.W.2d 117; Ibsen v. State (Nev.), 422 P.2d 543; and Shaumberg v. State (Nev.), 2 Cr.L. 2116, and. the authorities therein cited.