316 So.2d 372 (1975)
STATE of Louisiana, Appellee,
v.
Charles Wayne SNEED, Appellant.
No. 55875.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*373 Bobby L. Culpepper, Holloway, Baker, Culpepper & Brunson, Jonesboro, Nesib Nader, Shreveport, for defendant-appellant.
*374 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., Robert Y. Butler, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of murder in the second degree, La.R.S. 14:30.1 (1973), and sentenced to life imprisonment at hard labor. He relies upon 64 bills of exceptions upon his appeal. Only a few of them require discussion, since most concern issues well settled by our jurisprudence or else allege nonprejudicial errors unsupported by authority and plainly without merit.
The context facts are these:
During the nighttime hours of June 12-13, 1974, five young black males robbed Mr. and Mrs. Curtis Jones. Three of them broke into the Jones residence, armed with a rifle. In the course of the robbery, they severely beat the old couple about the head. Mr. Jones died of his injuries.
The defendant, then aged 17, is charged with participating in this crime. He was initially indicated for first degree murder, i.e., a killing of a human being when the offender has a specific intent to inflict great bodily harm and is engaged in the perpetration of an armed robbery. La.R.S. 14:30 (1973). He was convicted of second degree murder, La.R.S. 14:30.1 (1973), a responsive verdict, La.C.Cr.P. art. 814 (1973), subjecting the person convicted to life imprisonment instead of death.

I. BILL NO. 61
The alleged error which causes us the most concern is that to which Bill of Exceptions 61 is taken. It concerns the introduction into evidence of an inculpatory statement made by the defendant the day following the murder. It was allegedly made to the defendant's college roommate. The defendant claims that he was not given the required pre-trial notice of its intended use, as required by law, so as to enable him to prepare a defense to it.
The Louisiana Code of Criminal Procedure of 1966 provides by Article 768: "If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
In alleged compliance with this requirement, on the morning of the trial the state handed to the counsel for the defendant a notice which stated: "Please take notice that the State of Louisiana in this prosecution intends to introduce inculpatory statements, exculpatory statements, and/or confessions made by the Defendant and you are so advised in writing prior to the beginning of the State's opening statement as required by Article 768, La.C.Cr.P."
During the trial, the state introduced the accused's confession. Later, as its final witness the state called Ezra Walker, the accused's college roommate.
Walker first testified that, when he went to sleep at 11 p.m. on the night of the murder, the accused was not in the room. The accused woke him momentarily when he returned at 2:30 a.m. Then, over objection by the defendant, Walker testified that, on the following morning, the accused told him that, the night before, he and four others had robbed the Joneses of money and had beaten up Mr. Jones.
The defendant's counsel's objection to introduction of this inculpatory statement was based on the ground that he had not been informed of any oral confession and that he had been not served with any notice of this particular oral statement, as required by La.C.Cr.P. art. 768.
The state contends that the above-quoted general notice of intent to introduce unspecified statements is sufficient compliance *375 with Article 768. The state errs in this contention.
The practice of giving such a general and non-informative notice is followed in some of the judicial districts of this state. We deem it advisable to discuss why such sort of general notice does not comply with the statutory purpose or requirement of Article 768. While (as will be seen) no reversal is required in the present case, we will carefully scrutinize the prejudicial consequences of a failure to identify the particular statements to be introduced in trials to be held subsequent to the clarification of the application of Article 768 by this opinion.

Purpose and intent of statutory notice required by Article 768
Article 768 represents an innovation in the 1966 Code of Criminal Procedure. The official revision commentaries explicitly state the legislative intent in providing this change from the prior law.
The 1928 code of criminal procedure required the opening statement of the prosecutor to explain "the nature of the charge and the evidence by which he expects to establish the same." La.R.S. 15:333 (1950). The jurisprudential interpretations of this enactment required the prosecutor to specify the fact and the type of confession or inculpatory statement the prosecutor intended to rely upon. State v. Stahl, 236 La. 362, 107 So.2d 650 (1959); State v. Jones, 230 La. 356, 88 So.2d 655 (1956); Official Revision Comment (b), La.C.Cr.P. art. 769 (1966).
The purpose of this requirement was to force a disclosure of this aspect of the state's case "in fairness to permit the defendant to adequately present his defense and avoid being taken by surprise." State v. Jones, cited above, at 88 So.2d 658. See also: State v. Ward, 187 La. 585, 175 So. 69 (1937); State v. Silsby, 176 La. 727, 146 So. 684 (1933); State v. Ducre, 173 La. 438, 137 So. 745 (1931). Thus, if the prosecutor failed to describe the confession or statement in his opening argument, he could not use the statement even in cross-examination of the defendant if the latter took the stand. State v. Ward, cited above (reversing a conviction on that account).
The jurisprudential strictness in this regard had several undesirable consequences, see Official Revision Comments (b) and (c)(2), Article 769: Even if the failure to announce the confession was inadvertent and not really prejudicial, the conviction was reversed. Again, the announcement of the prosecutor that he was going to introduce a confession or inculpatory statement tended to prejudice the jury against the defendant before a word of evidence was heard. On the other hand, if the confession was described in the opening statement but later not admitted into evidence, a reversal was required, see State v. Cannon, 184 La. 514, 166 So. 485 (1936).
The new approach of the 1966 code was designed to end these undesirable consequences of the former practice. The state was prohibited from adverting in any way in the opening statement to a confession or inculpatory statement by the defendant. Article 766. Instead, it was required to advise the defendant in writing prior to the state's opening statement of an intent to use this type of evidence, with a failure to do so making (as formerly) the confession or statement inadmissible in evidence. Article 768.
The undoubted intent, as in the pre-1966 jurisprudence cited above, was to afford the defendant full notice of the state's intent to prove its case insofar as the intended introduction of confessions or inculpatory statements. As stated in Official Revision Comment (c)(2), Article 769: "The defendant cannot properly prepare to meet the issue unless he is apprised that the *376 state intends to use the confession." (Italics ours.)[1]
The purpose is not simply to give the defendant notice of a confession or inculpatory statements, but also of the state's intent to use it at the trial. See Official Revision Comment (f), Article 703, and pre-1966 decisions cited; Bennett, 31 La. L.Rev. 374 (1971). The defendant's trial strategy (such as a decision to testify or not) and the preparation of his defense (such as securing witnesses to attempt to prove involuntariness or to explain an involuntary statement) are affected by the state's notice (or not) of its intent to use a given confession or statement. See, e.g., State v. Jackson, 260 La. 561, 256 So.2d 627 (1972).
Article 768 itself provides that the state must give notice of its intent "to introduce a confession or inculpatory statement in evidence." (Italics ours.) The use of the singular (as well as the functional intent of the article) means that the state must give sufficient notice of each confession or inculpatory statement it intends to use, with sufficient specificity as to date or occasion and as to persons to whom given as to afford adequate notice sufficient to permit the defendant a fair opportunity to meet the issue.
A general notice, as here, that the state intends to use unspecified confessions or inculpatory statements complies neither with the letter nor the functional intent and purpose of Article 768. Upon well-founded objection that the notice required by Article 768 has not been given, the trial court is required to exclude the inculpatory statement by the mandatory terms of the legislative enactment. Nevertheless, where substantial compliance with the article's purpose has been met through other pre-trial pleadings, as here, the technical deficiency of the notice may not bar introduction of the statement.

Prior applications of Article 768
The jurisprudence interpreting Article 768 recognizes its essential purpose as being to afford notice to the defendant of inculpatory statements or confessions sufficient to enable him to prepare his defense as to the issue. State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970); State v. Rodgers, 251 La. 953, 207 So.2d 755 (1968). An example of the particularized notice contemplated is found in State v. Richey, 258 La. 1094, 249 So.2d 143, 160 (1971), which held notice must be given of the fact of the statement, but not of its content.
Despite this recognition, the failure to give notice as to particular statements has been excused on occasions, usually under a notice or under circumstances (such as by a motion to suppress or bill of particulars) where the accused had actual (although not formal) notice of the state's intent to use the inculpatory statements introduced.
Thus, in State v. Palmer, 251 La. 759, 206 So.2d 485 (1968), the notice described the statements as having been "made by the accused to investigating officers", 206 So.2d 487, and no objection was made at the time the investigating officer testified to the statement. In State v. Anderson, 254 La. 1107, 229 So.2d 329, 338-39 (1969), the notice described in detail various oral and written statements but inadvertently omitted several closely connected oral statements made to the police officers during the same period. In both of these instances, this court felt that there had been substantial compliance with Article 768 and no actual surprise.
*377 The holding in these cases that no reversible error resulted from the failure of the notice to identify the statements more particularly is somewhat similar to our holdings which have excused the prosecution's inadvertent and good faith failure to give the notice before the opening statement, as required by the code article. When, in the absence of bad faith, the notice was given shortly after the trial had commenced, this court has excused the technical violation where the circumstances negated any actual prejudice. State v. Coates, 273 So.2d 282 (La. 1973); State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970).
Similarly, where the formal notice under Article 768 was technically insufficient, we have held that no reversible error resulted if the accused in fact had notice of the prosecution's intent to use the confession or inculpatory statement, such as by an answer to a bill of particulars which attached the entire confession or summarized the inculpatory statements intended to be used. State v. Normand, 298 So.2d 823 (La. 1974), State v. Coates, 273 So.2d 282 (La. 1973). Accordingly, for instance, we held that the purposes of the notice were served by a letter sent some time prior to trial by the district attorney to the defense counsel informing the latter of the state's intention to use various statements and a confession. State v. Brumfield, 263 La. 147, 267 So.2d 553 (1972).[2]

No Present Prejudice
By motion for oyer filed shortly before the trial, the defendant prayed for an order to the district attorney to furnish him with all oral confessions, statements, or admissions made by the defendant either before or after his arrest for the offense charged. The minute entry of November 11th shows that the state agreed to furnish the accused all such statements before jury selection commenced on the first day of the trial. See Tr. 13.
We note that the defendant's objection to introduction of his roommate's testimony as to his own inculpatory statement was on the technical ground that the formal notice of intent under Article 768 did not describe a statement of the nature sought to be introduced. Tr. 949. Had the defendant actually been misled to his prejudice by the state's failure to give him notice of this particular inculpatory statement in accordance with its agreement to comply with the motion for oyer, such prejudicially misleading conduct, State v. Boothe, 310 So.2d 826 (decided March 31, 1974), would, we are sure, have been strongly asserted as a ground for the objection.
Accordingly, since the record indicates that before the trial, in a state response to his motion for oyer, the accused was informed of the fact and of the content of the inculpatory statement to which objection was made, we find no prejudice resulted from the technical failure of the Article 768 notice to describe such statement with particularity. We therefore do not find reversible merit to this bill.

II. OTHER BILLS
The other bills likewise do not present reversible error:
1. Our prior decisions have rejected similar attacks on the constitutionality of the first and second degree murder statutes and on the use of the short-form indictment in connection therewith. Bill Nos. 3, 4, 6. The effective exclusion of women from jury venires for this 1974 trial, in accordance with state law at that time, does not invalidate this conviction. *378 Bill No. 6. We are unable to say that the trial court erred in sustaining the state's challenge for cause to a prospective juror, a minister, whose testimony reasonably indicated he could never concur in a deathpenalty verdict, see Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Bill No. 10.
2. The oral confession of the defendant is proved to have been given voluntarily, without duress, coercion, or any inducement. Bill Nos. 44-53. After this foundation was laid outside the presence of the jury, the deputy sheriff testified before the jury as to the circumstances of the electronic transcription of the oral questions by him, with answers by the accused. The confession was then played to the jury and simultaneously transcribed for the appellate record. Despite the defendant's complaint, we find no objection to this method of introducing the contents of the confession.
3. The defendant objected to the introduction of latent fingerprints taken at the scene on the morning following the murder. Through them, he was identified at the trial as a participant in the robbery.
The defendant principally objected to introduction of the fingerprints as not within the scope of the State's opening statement. La.C.Cr.P. art. 766. This argument overlooks the later jurisprudence that the state's evidence need not be detailed in the opening statement and that the statement's primary function is to set forth in general terms the nature of the charge and of the evidence sufficient so as to enable the jury to follow the proceedings and so as to inform the accused of what acts on his part the State intends to prove. La.C.Cr.P. art. 769, Official Revision Comment; State v. Roquemore, 292 So.2d 204 (La.1974); State v. Himel, 260 La. 949, 257 So.2d 670 (1972); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970). Bill Nos. 33, 35-37, 40-43. The objections to testimony of the State fingerprint witnesses or to their expert qualifications are equally without merit. Bill Nos. 34, 38, 39.
4. The defendant contends that the State did not establish that the robbery-beatings caused Mr. Jones' death. The basis of this objection is that the Shreveport physician who completed the autopsy did not testify, whereas (by this bill) it is contended that the coroner, who did testify, could not competently testify as his own opinion of the cause of death. Bill No. 20.
The coroner, who was the Jones' family physician, came the morning of the robbery. He found the body of Mr. Jones, trussed with electric cord, with bad bruising from a beating around the head, neck, hands, and feet. There was considerable blood on the victim's body and bed clothes. We find no merit in the contention urged by this bill that the coroner could not competently testify that the general cause of death in the body he found was the extensive beating and loss of blood.
5. As Mrs. Jones was leaving the stand after testifying as to the nighttime raid on her home, she asked the accused, "Wayne, why did you kill Mr. Jones?" Bill No. 18 was taken to the trial court's denial of the defendant's motion for a mistrial. We do not think reversal is warranted for this unsolicited remark under all of the circumstances, especially in view of the trial court's strong admonition to the jury to disregard it completely, La.C.Cr.P. Art. 771, and in view of the general fairness of the state in its dispassionate presentation of its case.
6. The other bills concern denials of continuances and trial rulings clearly non-erroneous, as well as a non-prejudicial denial of pre-trial discovery in accord with present Louisiana jurisprudence.
7. A condition of the defendant's sentence is that, in accordance with La.R.S. 14:30.1, he is not eligible "for parole, probation, or suspension of sentence" for a specified period. Tr. 27. Despite the complaint *379 in brief, the sentence is not subject to amendment as infringing on the executive's right to pardon, as was the sentence in State v. Spotville, 308 So.2d 763 (1975).

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
SANDERS, C.J., concurs with written reasons.
MARCUS, J., concurs.
DIXON, J., concurs with reasons.
SANDERS, Chief Justice (concurring).
Construing Article 768 of the Louisiana Code of Criminal Procedure, the majority appears to hold:
"[T]he state must give sufficient notice of each confession or inculpatory statement it intends to use, with sufficient specificity as to date or occasion and as to persons to whom given . . ."
This holding is in conflict with State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969), and State v. Palmer, 251 La. 759, 206 So.2d 485 (1968), recent decisions of this Court applying Article 768.
In State v. Anderson, supra, the State gave the following notice:
"[T]he State of Louisiana, intends to introduce in evidence each and every confession and statement of each and everyone of these defendants, whether same be oral or recorded (and later transcribed into writing) or written, and whether inculpatory or exculpatory, particularly BUT NOT LIMITED TO the following statements:" (Italics mine).
The oral statements objected to were not among those described in detail. The Court held the notice to be sufficient.
In State v. Palmer, supra, this Court upheld a written notice "that on the trial of this case the State of Louisiana intends to introduce in evidence certain oral inculpatory statements made by the accused to investigating officers."
The holding is also in conflict with the jurisprudence under LSA-R.S. 15:333, the former statute dealing with the opening statement of the District Attorney. See State v. Jones, 230 La. 356, 88 So.2d 655 (1956); State v. Bishop, 179 La. 378, 154 So. 30 (1934); 3 La.L.Rev. 240 at f.n. 17.
In State v. Bishop, supra, the District Attorney stated only that he would offer the voluntary confession of the accused. Explaining its decision in an earlier case and holding the statement sufficient, this Court stated:
"The holding of this Court, divested of superfluity, is that, where the district attorney proposed to offer in evidence the confession of the accused, he should, in his opening statement inform the jury of that fact."
In 3 La.L.Rev. 240, supra, the former jurisprudence is summarized as follows:
"But no details beyond the fact that the prosecution intends to use a confession need, apparently, be given."
I find no adequate reason to impose an arbitrary rule upon the State requiring a detailed description of each statement in the notice. The code article does not require it, and it would serve no useful purpose, since the notice is normally given to defense counsel immediately before the District Attorney's opening statement.
For the reasons assigned, I concur in the decree.
DIXON, Justice (concurring).
I respectfully concur in affirming this conviction, but cannot agree to treatment of Bill No. 61.
*380 The opening statement of the district attorney and the notice of intent to use inculpatory statements are virtually useless in the defense of criminal cases except as sources of arguments on appeal. Both rules are honored more in the breach than in the enforcement, as this opinion makes evident.
Since the "rights" to have an opening statement by the prosecution and to have notice before trial that statements will be used are of so little value in securing a fair trial, I cannot believe this court will begin to reverse convictions for their violation.
NOTES
[1] Since this is the purpose of the Article 768 notice, the commentators have generally criticized our decisions in State v. Cleary, 262 La. 539, 263 So.2d 882 (1972) and State v. Himel, 260 La. 949, 257 So.2d 670 (1972) holding that the notice is not required in non-jury trials; they have agreed with the dissenting opinions. Pugh, 34 La.L.Rev. 461 (1974); Pugh, 33 La.L.Rev. 319 (1973); Comment, 33 La.L.Rev. 408 (1973).
[2] Article 768 specifies that the state must advise the defense in writing of its intent to use inculpatory statements "prior to beginning the state's opening statement." Brumfield indicates that this is the minimum advance notice required; in fact, the purposes of the provision might better be served by notice more in advance of the trial date than the opening morning of the trial.