343 So.2d 149 (1977)
STATE of Louisiana
v.
Herbert GREEN.
No. 58417.
Supreme Court of Louisiana.
February 28, 1977.
*150 Robert F. DeJean, Sr., Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, First Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged Herbert Green with negligent homicide. After trial, the jury returned a verdict of guilty. The trial judge sentenced the defendant to three years imprisonment, but suspended the sentence and placed the defendant on active probation for five years. As a special condition of his probation, defendant was required *151 to serve six months in the parish jail and surrender his driver's license during the period of probation. On appeal, defendant relies upon five assignments of error for reversal of his conviction and sentence. Assignment of Error No. 1, being specifically abandoned, is not considered.

ASSIGNMENTS OF ERROR NOS. 2 AND 4
These two assignments of error are based upon the denial of defendant's motion for a mistrial. The defense made the motion after the trial court ruled that the results of chemical tests of defendant's blood, showing the alcoholic content, were inadmissible because of a failure to comply with the requirements of LSA-R.S. 32:661(C) governing admissibility. Because the blood tests were ruled inadmissible, the defense asserted that the prior reference to the test, in the State's opening statement and by a witness, Officer Gennuso, was prejudicial and warranted a mistrial.
The officer testified only that a physician drew a blood sample and that he later sent it to the laboratory. In our opinion, this general testimony did not ripen into a ground for a mistrial because of the later rejection of the results of the blood tests.
In his opening statement, the prosecutor made the following reference to the blood tests:
"The State is going to show you by competent evidence that at the time this accident happened that this defendant didn't even realize that there was a red light at this particular intersection, he didn't even realize it. Why didn't he realize it? The State is going to show you by competent evidence, we're going to introduce the nurse who extracted blood from his arm, the defendant's arm, at the hospital. It was taken to the crime lab in New Iberia where it was analyzed and it showed that this man had a blood alcohol content by weight of .30. Under the law of Louisiana a person with a blood alcohol content of .10 is presumed to be intoxicated. This man is three times past that presumption. The State is going to show you because of this condition this is why he didn't know there was even a red light at this particular intersection."
Article 766 of the Louisiana Code of Criminal Procedure provides:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
Under the article, the State's opening statement is mandatory. In addition to explaining the nature of the charge, the statement must set forth, in general terms, the nature of the evidence by which the State expects to prove the charge. The opening statement here complied with the requirements of the article.
The question presented here is whether a mistrial is required because the blood tests, mentioned in the opening statement as one of the items of proof, were later ruled inadmissible.
The prosecutor's opening statement is not evidence and has no probative force. Rather, it is designed to inform the jury so that they may understand the evidence as it unfolds and to protect the defendant from surprise. LSA-C.Cr.P. Art. 766; State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Dugas, 252 La. 345, 211 So.2d 285, cert. denied 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969).
The general rule is that, absent bad faith on the part of the prosecutor or clear and substantial prejudice, the reference in the opening statement to evidence later ruled inadmissible is not a ground for a mistrial. The rule takes into account that proof frequently falls short of professional expectations. State v. Shaffer, supra; State v. McKee, 170 La. 630, 128 So. 658 (1930); Annot.: Prosecution-Opening Statement, 28 A.L.R.2d 972, 974; 75 Am.Jur.2d, Trial, § 208, p. 291.
The trial judge ruled the results of the blood tests inadmissible, because the *152 consent form signed by the defendant contained no recital that the defendant had been advised of his rights. See LSA-R.S. 32:661(C). The State argues again in this Court that, despite the absence of the signed rights' form, the blood tests were nonetheless admissible. It relies upon State v. Bruins, La., 315 So.2d 293 (1975). The State concedes that it lost the benefit of the presumption of intoxication created by LSA-R.S. 32:662. We assume, however, that the ruling of the trial judge was correct.
The trial judge found the prosecutor to be in good faith, stating:
"It appears that the State was in good faith in its assertion in the opening statement regarding the results of the blood test. The lab packet supposedly containing the requisite forms signed by defendant for his consent etc. to the blood extraction was not received by the State until the second day of the trial and apparently it did not know until that time that the results of the blood test would not be admissible."
The finding of the trial judge as to the good faith of the prosecutor is entitled to great weight. See, e.g., State v. Graves, 259 La. 526, 250 So.2d 727 (1971); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971). We discern no adequate basis for a contrary finding.
More difficult is the question as to whether or not there was clear and substantial prejudice. Persuasive with us is the strong action taken by the trial judge to avoid prejudice. In a clearly worded and emphatic instruction, he cautioned the jury that the prosecutor's statement of what would be proved was not evidence and could not be considered. See ABA Standards for Criminal Justice, The Prosecution Function and Defense Function, § 5.5 and commentary.
The trial judge instructed the jury as follows:
"I want to repeat with particular emphasis and force what I have said to you before, and that is that nothing you have heard about this particular case can be considered by you unless it came from the mouth of a witness sworn in this case. What the lawyers said is not evidence; what the lawyers argued the evidence was is not evidence; what the lawyers said was proved is not evidence; what the lawyers said would be proved is not evidence; it's only the lawyer's appreciation of what the facts were or what they thought the facts would be, and you are prohibited by law and under your oath from considering as evidence anything an attorney or anyone else, a judge, a court official said. The only thing you can consider as testimony in this case is what came from the mouths of the witnesses on this witness stand. Accordingly, I reemphasize that to you."
We regard the case of State v. Shaffer, supra, as controlling here. In that case, the district attorney, in his opening statement, said: "The State will show the medical findings in this case are compatible with rape and recent sexual intercourse." When the State had rested, defendants moved for a mistrial on the ground that the State had failed to produce the medical evidence. We held:
"The opening statement has no probative force. State v. Kreller, 255 La. 982, 233 So.2d 906. It is designed to inform and protect from surprise. The failure to produce the medical evidence raises only a question of sufficiency of the proof and is no ground for a mistrial. See C.Cr.P. Art. 775."
We conclude that the trial judge properly overruled the motion for a mistrial and that these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 5
Defendant objected to the introduction into evidence of certain oral inculpatory statements made to Officers Curley Lanclos and Paul Gennuso. Defendant concedes, in brief, that he was fully apprised of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d *153 694 (1966). Defendant summarizes the issue: "The sole issue before the court was whether or not the Defendant was capable of understanding what was transpiring and what his rights were at the time that questions were asked and certain alleged inculpatory statements were made." Defendant contends that the inculpatory statements were inadmissible, the defendant being incapable of understanding because of intoxication or a blow on the head.
In ruling upon the confessions of intoxicated persons, we have consistently held that to render a confession inadmissible, the intoxication must be such as to destroy the defendant's comprehension and render him unconscious of what he is saying. State v. Phanor, La., 325 So.2d 579 (1976); State v. Manuel, 253 La. 195, 217 So.2d 369 (1969); State v. Alexander, 215 La. 245, 40 So.2d 232 (1949); State v. Berry, 50 La.Ann. 1309, 24 So. 329 (1898); 3 Wharton's Criminal Evidence, § 688, p. 479 (13th ed. 1972); 23 C.J.S., Criminal Law, § 828, p. 226. Intoxication, of course, is a factor to be considered by the jury in determining the weight to be accorded to a confession.
Defendant argues that he did not know what he was doing, and did not understand his rights. He points to two isolated portions of testimony by Officers Lanclos and Gennuso, in which the officers used the word "incoherent." The testimony of these officers, taken as a whole, establishes that the defendant knew what he was doing. This is clearly shown by their testimony concerning the defendant's condition and understanding at the scene of the accident and shortly thereafter at the hospital.
When the defendant was informed of his rights by the officers, he stated that he understood them. He identified his automobile for Officer Lanclos. He told Officer Lanclos that he had been drinking, and told Officer Gennuso that he had consumed two tall "Schlitz" and "a pint or half a pint" of whiskey at a designated barroom. He contended that the fatal accident occurred before he arrived at the scene, stating: "Get off of my back, I told you the wreck had happened when I got there." He answered all questions Officer Lanclos asked him. He denied seeing the traffic light at the intersection on two separate occasions. He consented to having a blood sample taken and signed his name to the consent form.
The defendant's actions and his responses to the officers' questions do not portray an individual who had been deprived of his comprehension, either by intoxication or trauma.
Assignments of Error Nos. 3 and 5 are without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant alleges that the trial court erred by giving the following charge to the jury:
"As the Court has already charged you, the Criminal Code provides that the violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence. The Criminal Code provides and prohibits the offense of operating a vehicle while intoxicated. Operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, vessel or other means of conveyance while under the influence of alcoholic beverages, etc."
Defendant does not question the statement of law contained in the charge. Rather, he bases his assignment of error on the circumstance that the results of the blood tests had been excluded from evidence.
The trial judge is required to charge the jury as to "the law applicable to the case". LSA-C.Cr.P. Art. 802. As we have already observed, there was evidence independent of the blood tests, tending to establish that defendant was intoxicated prior to the accident. Hence, the trial judge correctly ruled that it was applicable.
Assignment of Error No. 6 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns written reasons.
*154 CALOGERO, J., dissents for the reasons assigned by TATE, J.
DENNIS, J., dissents.
TATE, Justice, dissenting.
I respectfully dissent.
The defendant is charged with negligent homicide as a result of driving while intoxicated.
In the prosecutor's opening statement, he stated analysis of the blood content immediately after the accident would show that it had an alcoholic content of .30 weight, whereas under our law there is a statutory presumption of intoxication when only .10 alcoholic content is shown. The prosecutor continued: "This man is three times past that presumption. The state is going to show you because of this condition, this is why he didn't know there was even a red light at this particular intersection."
At the trial, it turned out that the results of the blood test were inadmissible as evidence. After the ruling of inadmissibility, the defendant immediately moved for a mistrial, which was denied. The denial of the mistrial was erroneous.
True, at the time of the opening statement, the prosecutor in good faith believed that the state could introduce the blood test of which he spoke. However, his belief turned out to be wrongthe blood test was inadmissible, but nevertheless the jury knew of the result of the blood test as surely as if it had been introduced.
Under these circumstances, the prosecutor's reference in opening statement to extremely prejudicial evidence which, as it turned out was inadmissible, entitle the defendant to a mistrial upon the ruling of inadmissibility. State v. Bell, 279 So.2d 164 (La.1973). There was no way to cure the prejudice caused the defendant by this reference to specific central evidence, which was in fact inadmissible.
La.C.Cr.P. art. 766 provides that the state's opening statement shall explain "in general terms, the nature of the evidence by which the state expects to prove the charge." Strictly speaking the opening statement need not detail the state's evidence but simply is designed to describe the state's case in general terms sufficient to enable the jury to understand the evidence as it unfolds as well as to inform the defendant, State v. Sneed, 316 So.2d 372 (La.1975). When the prosecutor details evidence which subsequently is not admitted, he takes the risk that a mistrial may have to be granted. See State v. Bell, cited above, and State v. Cannon, 184 La. 514,166 So. 485, 487 (1936), including summary of its holding at Official Revision Comment (B) La.C.Cr.P. art. 769.
The majority cites a general rule that reference to evidence later ruled inadmissible is not a ground for mistrial. The complete general rule relied upon is as follows, 75 Am.Jur.2d "Trial", § 208: "Generally, statements by counsel that certain evidence will be introduced are not improper if made in good faith and with reasonable ground to believe that the evidence is admissible, even though the intended proof referred to is afterward excluded. However, in the absence of good faith, or where prejudice is clearly produced, whether as the result of accident, inadvertence, or misconception, the rule is to the contrary." (Italics ours.)
Likewise, as stated at the Annotation, ProsecutionOpening Statement, 28 A.L. R.2d 972, 974 (1953), the complete general rule is as follows: "As a general rule, courts recognize the fact that proof frequently fails to come up to expectations, and so the tendency is to permit a prosecuting attorney a reasonable latitude in stating to the jury the facts proposed to be shown. And where no substantial prejudice results, and there is nothing to show that the prosecuting attorney acted in bad faith, the appellate court will usually refuse to reverse or to remand for a new trial because of a reference by the prosecuting attorney to matters which he subsequently made no attempt to prove." (Italics ours.)
The prejudice here caused by the prosecutor's detailed statement of the results of scientific tests to be introduced, admittedly made in good faith at the time, simply could *155 not be cured by an admonition by the trial court.
From the statement, the jury knew that objective scientific tests presumably proved that the accused had consumed three times as much alcohol as needed for intoxication. In this prosecution for negligent homicide, the central issue was whether the accused was intoxicated at the time of the accident.
Despite any admonition by the trial court to the jury to disregard the knowledge of this most crucial (but inadmissible) evidence it had gained from the prosecutor's opening statement, the jury knew of the result of this inadmissible test just as surely as if it had been erroneously introduced into evidence. The prejudice was perhaps all the greater, because the accused was deprived of his normal right to cross-examine the expert testimony as to the tests and to attempt to demonstrate the possibility of error or of misidentification of the blood tested.
Fully recognizing that the conscientious prosecutor was in the utmost good faith as to his intention to introduce the blood tests he described in his opening statement, nevertheless I am impelled to find that, when the result of the test was ruled legally inadmissible, the accused was caused substantial prejudiceand prejudice not curable by an admonition to the jury to disregard the knowledge it had thus gained of truly crucial evidence tending to prove the central contested issue of the prosecution, the accused's intoxication.
I must therefore respectfully dissent.