464 So.2d 1071 (1985)
STATE of Louisiana
v.
Shirley MAILLIAN.
No. 84 KA 0507.
Court of Appeal of Louisiana, First Circuit.
February 28, 1985.
*1073 Ossie Brown, Dist. Atty. by Asst. Dist. Atty. John Sinquefield, Baton Rouge, for plaintiff-appellee.
J. Michael McDonald, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
Shirley Maillian was indicted by a grand jury on August 31, 1983, charged with second degree murder of her estranged husband, Ronnie Maillian, a violation of L.S. A.-R.S. 14:30.1. Maillian pled not guilty and, after a jury trial, was found guilty of the responsive verdict of manslaughter, a violation of L.S.A.-R.S. 14:31. The trial court sentenced Maillian to twenty-one years imprisonment in the custody of the Louisiana Department of Corrections. In addition, Maillian was given a two-year sentence pursuant to L.S.A.-R.S. 14:95.2 because the facts of the instant offense disclose that it was committed with a firearm. The trial court ordered the two-year sentence to be served consecutively to the twenty-one years imposed and without benefit of parole, probation, suspension of sentence or credit for good time.
Maillian brings this appeal urging eight assignments of error:
1. The trial court erred in allowing the prosecution to comment on inadmissible evidence in its opening statement and not granting defendant's motion for a new trial based on the prejudicial statements.
2. The trial court erred in not granting defendant's motion for a mistrial after the prosecution told the jury about the victim's alleged vasectomy and the defendant's alleged abortion after the court ruled this evidence to be inadmissible.
3. The trial court erred in not allowing defendant's private investigator to testify to prior hostile acts of the victim.

*1074 4. The trial court erred in allowing any testimony from the victim's attorneys.
5. The trial court erred in not granting the defendant a mistrial after the in camera hearing with the juror, Carol Kaiser.
6. The trial court erred in not granting defendant a new trial since she was not present at the court's in camera hearing on the jurors, Carol Kaiser and Mary Henderson.
7. The trial court erred in not granting the defendant a mistrial when the prosecutor told the jury about the testimony of the defendant's custody case and allegations in the family court suit between defendant and victim.
8. The trial court erred in giving the defendant an excessive and illegal sentence.
Assignments of Error Nos. 3 and 6 are not briefed and are thereby considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
At the time of the instant offense, Ronnie Maillian and Shirley Maillian were legally separated. Shirley Maillian continued to reside in the matrimonial domicile, and Ronnie Maillian lived with his girlfriend, Joyce Paul, and the Maillian's ten year old son, Matthew, in a house located several miles from defendant's house.
During the early morning hours of August 22, 1983, Matthew left his father's house without permission, apparently travelling by bicycle to his mother's house. Matthew would not return to his father's home on August 22, 1983, although negotiations between the parents' respective attorneys had achieved some progress. All parties to the matter had agreed to meet on the morning of August 23, 1983 to discuss the issue of Matthew's custody. After speaking by telephone with his son at about 7:00 P.M. on August 22, 1983, Ronnie Maillian and Joyce Paul went to her sister's house for food and drinks.
According to the trial testimony of Joyce Paul, she and Ronnie Maillian left her sister's house about 11:30 P.M. and drove to Shirley Maillian's house. Ronnie Maillian got out, walked to Shirley Maillian's front door, and rang the door bell. Joyce Paul stated that she exited the car a short time later and observed Shirley Maillian standing behind a glass panel beside the front door. Ronnie Maillian continued to ring the doorbell and knock on the front door while insisting that he be allowed to see his son, Matthew. Joyce Paul testified that as Ronnie Maillian turned to warn her that Shirley Maillian had a gun, Shirley Maillian's gun discharged from inside the house striking Ronnie Maillian in the right parietal region of the head. Ronnie Maillian died a short time later as a result of the gunshot wound.
Joyce Paul further testified that Shirley Maillian came out of her house after the shooting and ordered Ms. Paul to leave the premises, saying that "this is what happens when you get involved with somebody else's husband." Ms. Paul testified that Shirley Maillian then went back inside her house for a short time and came out again. This time Shirley Maillian searched inside Ronnie Maillian's parked car. Shirley Maillian thereafter returned to her house and remained inside until law enforcement officers arrived. Detective Dietrich, who assisted in Shirley Maillian's arrest, located her inside the house without incident. Shirley Maillian told him that she had shot Ronnie Maillian accidentally, because she was afraid that he was going to burn down her house.

ASSIGNMENT OF ERROR NO. 1
By means of Assignment of Error No. 1, Shirley Maillian contends that the trial court erred by allowing the prosecutor to comment on inadmissible evidence during his opening statement and by failing to order a mistrial due to the prejudicial nature of the prosecutor's comments. During the state's opening statement, defendant objected several times. Each of the defense objections was overruled by the *1075 trial court. When an objection is overruled, no motion for mistrial is required to preserve the error for review. State v. Williams, 373 So.2d 1278 (La.1979). In his opening statement, the prosecutor made the following references:
[T]he original petition [for legal separation] shows that Dr. Maillian filed an original petition alleging [defendant] had made threats upon his life, had stolen a gun from him, had taken over his business, had been cruel and mean to the child.... [T]he divorce proceedings heated up leading to an ... embittered child custody action in which the defendant's own mother testified against her and filed an affidavit notarized by Mr. Maillian's own attorney..... We will show evidence that, from his point of view, that she underwent ... one or more pregnancy terminations against his will.... We will show you that, later, that she was, despite this vasectomy by her husband, that she gave birth to a second child that was born after the, after her husband had left in October.... That Dr. Maillian claimed that this wasn't his child and started legal proceedings which now had been filed to disavow this child.
Article 766 of the Louisiana Code of Criminal Procedure provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
Under this article, the state's opening statement is mandatory. Strictly speaking, the opening statement need not detail the state's evidence but simply is designed to describe the state's case in general terms sufficient to enable the jury to understand the evidence as it unfolds as well as to inform the defendant. State v. Sneed, 316 So.2d 372 (La.1975). When the prosecutor details evidence which subsequently is not admitted, he takes the risk that a mistrial may have to be granted. See, State v. Bell, 279 So.2d 164 (La.1973).
The prosecutor's opening statement is not evidence and has no probative force. State v. Green, 343 So.2d 149 (La. 1977). The general rule is that, absent bad faith on the part of the prosecutor or clear and substantial prejudice, references in the opening statement to evidence later ruled inadmissible is not ground for a mistrial. The rule takes into account that proof frequently falls short of professional expectations. Id.
Defendant has not shown, nor does the record indicate, that she suffered any clear and substantial prejudice from the remarks. In addition, there is no conclusive indication of prosecutorial bad faith as the state made every effort to admit evidence at trial relative to the objectionable portions of its opening statement.
This assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 7

(ARGUMENTS NOS. 2 AND 3, RESPECTIVELY)
By Assignment of Error No. 2, defendant urges that the trial court again erred by failing to grant a mistrial following the prosecutor's attempts to introduce inadmissible evidence referenced in his opening statement. The evidence objected to included reference to Shirley Maillian's having previously terminated a pregnancy by abortion, and to Shirley Maillian's having given birth to another child which could not have been fathered by Ronnie Maillian because he had an intact vasectomy. By Assignment of Error No. 7, defendant urges that the trial court again erred by failing to grant a mistrial after the prosecutor sought to introduce inadmissible evidence also referenced in his opening statement, that Shirley Maillian's mother had testified during family court proceedings against Shirley Maillian's retaining custody of Matthew Maillian. In addition, defendant urges that the cumulative effect of the above referenced errors was so prejudicial as to preclude Shirley Maillian's receiving a fair trial.
*1076 The prosecutor's first attempt to introduce the fact of Ronnie Maillian's vasectomy was during the testimony of Joyce Paul. Shirley Maillian's objection based on hearsay was properly sustained by the trial court; however, no further relief was sought by defendant. If an objection is sustained, defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied either an admonition to disregard or mistrial. State v. Michel, 422 So.2d 1115 (La.1982). The state also asked the pathologist who had performed the autopsy on Ronnie Maillian if the victim had an intact vasectomy at the time of his death. Defendant's objection to that question based on its lack of relevance was also properly sustained by the trial court. Again, no further relief was sought by defendant. The trial court also advised the state, out of the presence of the jury, that evidence of the victim's vasectomy might be admissible in rebuttal depending on defendant's developing trial strategy.
The prosecutor's third attempt to admit evidence of the victim's vasectomy was through the testimony of the doctor who had performed the procedure. In this instance the state, out of the presence of the jury, admitted that Dr. Vick's testimony was solely for the purpose of establishing the fact of the victim's vasectomy. Despite the trial court's advising the prosecutor that the evidence had no relevance at this time, when the jury was returned, the state called Dr. Vick to the stand and asked him if he had performed a vasectomy on Ronnie Maillian. Again the defendant's objection was sustained and the trial judge, sua sponte, admonished the jury to disregard the evidence as not being admissible.
Through the testimony of Robert Funderburk, an attorney who had represented the victim in domestic relations litigation, the state sought to introduce evidence that Shirley Maillian's mother had testified against her at a child custody proceeding. The objection to the state's question to Mr. Funderburk "Did her own mother testify against her in the hearing?" was properly sustained by the trial court. However, defendant's motion for a mistrial was denied. Thereafter, the prosecutor sought to introduce an affidavit signed by Shirley Maillian's mother. Objection to introduction of that document was also sustained. During further questioning of Mr. Funderburk concerning investigation of the paternity of Shirley Maillian's second child, the prosecutor asked: "Did you ever have in your possession or did you observe a check written by the defendant to Delta Women's ___." Although defense objection to this question was sustained, motion for mistrial was denied.
After the jury had been recessed for the day, the trial court admonished the state, in pertinent part: "I know that you know better than to ask that kind of a question and I will request that you refrain from that in the future. Anything further along those lines and I will be forced to grant a mistrial."
Thus, the trial judge, although noting that the state's line of questioning was irrelevant but potentially prejudicial, declined to grant a mistrial. In the present case, the prosecutor's questioning which sought to elicit information concerning the alleged bad character of Shirley Maillian through specific acts, did not fall within the proscriptions of La.C.Cr.P. art. 770 and does not require automatic reversal. The provisions of the Code of Criminal Procedure which have been recognized as applicable to this situation are articles 771 and 775. The general rule regarding reversible error due to improper questioning, where the judge has ruled in defendant's favor and admonished the jury to disregard the question, requires a clear showing that the matters complained of are of such an extreme prejudicial nature that the damage caused could not be erased from the minds of the jurors and that, as a consequence, the defendant was deprived of a fair and impartial trial. State v. Morris, 404 So.2d 1186 (La.1981).
Although cognizant that the subject matter addressed by the state's improper questioning, particularly the subject of abortion, is often charged with controversy and emotion, *1077 we are of the opinion that the questions asked by the prosecutor were not sufficiently prejudicial to warrant a reversal over and above the trial judge's admonitions. The questions did impugn Shirley Maillian's character; however, the verdict alone indicates that the jury accepted that the victim was provoking Shirley Maillian by returning the responsive verdict of manslaughter.
Accordingly, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 4
By means of this assignment, defendant urges that the trial court erred in allowing the state to call to testify two attorneys who had handled Ronnie Maillian's domestic relations litigation because the state knew that these attorneys would have to invoke the attorney/client privilege.
When the state knows that a witness will exercise a valid privilege, it is reversible error to require the witness to exercise his privilege in front of the jury. State v. Day, 400 So.2d 622 (La.1981). However, in the instant case, the state did not call these witnesses for the purpose of impressing upon the jury a claim of privilege as defendant contends. Instead, the purpose of the testimony was an attempt by the state to show motive on the part of Shirley Maillian.
Relative to attorney-client privilege, our law provides:
"The right to exclude the testimony, as provided in the three articles last preceding, is purely personal, and can be set up only by the person in whose favor the right exists. If the right is waived, the legal adviser, the physician and the clergyman, as the case may be, may be examined and cross-examined to the same extent as any other witness." L.S.A.-R.S. 15:478.
Under the plain dictates of § 478, Shirley Maillian had no right to exclude the testimony, as she is not "the person in whose favor the right exists." [She was neither attorney nor client.] Therefore, the trial court was correct in ruling that the attorneys were competent to testify.
Accordingly, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. 5
By this assignment, defendant contends that the trial court erred by not granting defendant a mistrial following the in camera hearing with juror, Carol Kaiser.
The record reveals that during the second day of trial, a juror, Carol Kaiser, requested of the bailiff that she be excused from the jury because she remembered that she knew the defendant. An in camera conference was held with the trial judge, prosecutor, defense counsels, and Carol Kaiser present. Ms. Kaiser revealed that she was close friends with a woman, named Lucille Begue, whom she had observed sitting behind the mother of the victim. Although Ms. Kaiser did not know if Lucille Begue was aligned with Shirley Maillian or the victim, she stated that just knowing that there was a potential relationship with either side would affect her decision in this case. When questioned by defense counsel, Ms. Kaiser replied that because of the uncertainty of Lucille Begue's relationship with the victim or defendant, she would probably lean towards defendant.
Ms. Kaiser was then sent back to the jury room while the trial court determined that Lucille Begue was married to the victim's uncle. This information was communicated to Ms. Kaiser, over defendant's objection. After having been advised of this information, Ms. Kaiser admitted that she would not be able to put it aside and make an objective decision based on the evidence admitted at trial. The trial court then excused Ms. Kaiser from the jury and substituted her with the alternate juror, Charles Baker.
Louisiana Code of Criminal Procedure art. 789 provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified prior to the time the jury retires *1078 to consider its verdict. In the instant case, the trial judge gave defendant an opportunity to explore Ms. Kaiser's inability on the record; she was not summarily discharged for inability to perform. Further, the record reveals that Ms. Kaiser fully manifested that she could not render an impartial verdict according to the law and the evidence prior to the trial court's advising her of Lucille Begue's relationship to the victim's family.
A defendant's right to have the original twelve jurors selected decide his fate is not absolute. Ample cause was present to discharge this juror. See, State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
By means of this assignment, defendant contends that the sentence imposed was excessive in violation of Louisiana Constitution Article 1, Section 20.
Defendant was sentenced to twenty-one years imprisonment at hard labor, the maximum permissible sentence for violation of LSA-R.S. 14:31, and an additional two years, without benefit of probation, parole, suspension of sentence, or credit for good time pursuant to LSA-R.S. 14:95.2.
A sentence imposed within statutory limits may still violate Louisiana's prohibition against excessive sentences. See, La. Const. art. 1, section 20 (1974); State v. Sepulvado, 367 So.2d 762 (La. 1979). The appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive are the guidelines provided in La.C.Cr.P. art. 894.1. State v. Moore, 446 So.2d 917 (La.App. 1st Cir.1984).
The initial elements to be analyzed in determining whether the punishment is constitutionally disproportionate are the nature of the offense and the offender. Another factor is comparison of the defendant's punishment with the sentences imposed for similar crimes by the same court and other courts. Such a comparison helps to assure that a defendant's sentence will be proportional in comparison with other offendersthat the maximum sentences will be reserved for the most egregious or blameworthy of offenders, and that others of similar conduct will not receive sentences lighter than the defendant's. State v. Telsee, 425 So.2d 1251 (La.1983).
In the present case, the nature of the offense involves a wife shooting her husband. The incident occurred in the middle of the night when the husband, who was under a court order not to go to the house, began ringing the doorbell and knocking on the door of the home while demanding to see his son. The son had earlier run away from the house shared by the husband and the husband's girlfriend. Earlier in the evening, all parties and their attorneys had agreed to meet the next morning in order to peaceably settle the controversy. In spite of this agreement, the husband went to Shirley Maillian's house and precipitated the confrontation which took his life. The jury returned a responsive verdict of manslaughter, which shows that its members did not consider the offense to be coldblooded or premeditated.
When looking at the offender, it is helpful to look at the grounds mentioned in La.C.Cr.P. art. 894.1(B), which are to be accorded weight in the determination of suspension of sentence or probation. One ground is that there was a substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense. Closely related to this is the ground that the defendant acted under strong provocation. In this case, the parties were undergoing a very bitter separation and custody dispute. There is evidence in the record showing that the victim's girlfriend was resentful of Shirley Maillian and taunted her on the telephone. Also, though Ronnie and Shirley Maillian were legally separated, his relationship with Ms. Paul was extramarital, and there was no attempt by the victim to be discreet in his conduct. This was obviously a cause of much embarrassment to *1079 Shirley Maillian. Another ground is where the victim of the defendant's criminal conduct induced or facilitated its commission. In the present case, the victim defied a court order by going to Shirley Maillian's home in the middle of the night. The record also establishes that the victim had been drinking prior to the incident.
Another consideration is that the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime. In this case, Shirley Maillian had no prior record. Her arrest for the present offense was the first time she was ever arrested. A further ground to consider is whether the defendant's criminal conduct was the result of circumstances unlikely to reoccur. As previously stated, the parties were going through a bitter separation and custody proceeding. An additional factor to consider is whether the character and attitudes of the defendant indicate that she is unlikely to commit another crime. Shirley Maillian was interviewed by mental health experts both before and after the incident in which she took her husband's life. All those who interviewed her were in agreement that she was under a great deal of pressure from the break-up of her marriage. Her psychiatrist, Dr. Cenac, stated that he believed that she would not be a danger to anyone. Finally, the fact that the imprisonment of the defendant would entail excessive hardship to himself or his dependents must be considered. In the present case, Shirley Maillian has two young children. Consideration must be given to this fact.
We must next compare Shirley Maillian's punishment with the sentences imposed for similar crimes by the same court. In State v. Stevenson, 447 So.2d 1125 (La.App. 1st Cir.1984), the defendant, who was 15 years old, shot and killed the victim with a .22 caliber magnum pistol. The defendant was sentenced to five years, plus two years pursuant to R.S. 14:95.2. In State v. McKnight, 446 So.2d 915 (La.App. 1st Cir. 1984), defendant was charged with the shooting death of his estranged wife. The defendant stated that the gun went off accidentally as he was attempting to give the gun to his wife. The trial judge went thoroughly into defendant's past record, noting what portions of C.Cr.P. 894.1 he was and was not considering. The defendant was sentenced to serve eighteen years, plus two years pursuant to R.S. 14:95.2. In State v. Cage, 444 So.2d 347 (La.App. 1st Cir.1983), the defendant followed his former paramour and her girlfriend home from a lounge, found his way into her apartment and then shot the victim in the face. The defendant was sentenced to two years unsupervised probation, plus two years pursuant to R.S. 14:95.2. In State v. Lang, 430 So.2d 1239 (La.App. 1st Cir. 1983), defendant was convicted of manslaughter. He was sentenced as a multiple offender to serve twenty-one years. This was one-half of the maximum possible sentence. He had a prior record, both as a juvenile and as an adult, and the trial court found the crime to be a bloody and brutal homicide. In State v. Brown, 412 So.2d 998 (La.1982), defendant pled guilty to manslaughter. Defendant shot and killed the victim in an argument. Defendant was sentenced to ten years.
We must finally compare sentences imposed by other courts. In particular, we will concentrate on those cases in which the trial court found the maximum sentences to be appropriate. In State v. Fluker, 454 So.2d 358 (La.App. 4th Cir.), defendant was convicted of manslaughter. Defendant and the victim argued over a call in a neighborhood football game. A fight ensued, and then defendant ran across the street, got a revolver, returned and shot victim in the head. The defendant received the maximum sentence of twenty-one years. The court held this sentence proper in view of the vicious manner in which this killing was committed. In State v. Brown, 452 So.2d 790 (La.App. 4th Cir.1984), defendant and victim argued over a chain and earring. Defendant saw the victim sitting in a bar, left to get a gun, returned, and shot the victim four times. Defendant was convicted of manslaughter and given the maximum *1080 sentence as a second offender, fortytwo years. The court found that the record justified categorizing defendant among the worst of persons guilty of manslaughter.
In State v. Heath, 447 So.2d 570 (La.App. 1st Cir.1984), defendant was convicted of manslaughter. Defendant and his roommate had become emotionally upset with each other, and the roommate became depressed. The defendant confessed he shot the victim in the head with a shotgun while the victim slept. Defendant then buried the body, and drove the victim's car to New Orleans, where he parked it in a parking garage. Defendant was sentenced to the maximum sentence of twenty-one years. On appeal, this court stated, "Despite defendant's lack of a prior record, we do not consider the sentence imposed so grossly disproportionate to the crime as to shock our sense of justice. Therefore, we do not find the sentence excessive." Id. at 577. This court also found the crime to be cruel and senseless.
In State v. Richardson, 446 So.2d 820 (La.App. 2d Cir.1984), defendant and drunk victim were fighting when defendant shot victim in the chest. In sentencing defendant to the maximum sentence of twenty-one years, the trial court complied with C.Cr.P. art. 894.1 and particularized the sentence to the defendant. He found that the defendant had a prior record, and found no sufficient provocation. The court further found the case involved serious harm and that defendant's actions resulted in the needless and senseless death of another person. On appeal, the sentence was affirmed.
In State v. Davis, 440 So.2d 818 (La.App. 1st Cir.1983), defendant and his wife were arguing when the wife was mortally wounded by a gunshot. Defendant claimed the gun, while in his wife's hand, discharged during the struggle, but the trial court found that the evidence showed this claim to be impossible. Defendant was found guilty of manslaughter and sentenced to the maximum term of twenty-one years. On appeal, this sentence was affirmed, the court especially noting the defendant's extensive criminal record, with sixteen offenses, including a prior manslaughter offense.
In State v. Smith, 437 So.2d 252 (La. 1983), the defendant and two companions waited for the victim at his trailer. When the victim arrived, he was tied up, and while one of his companions held a gun on the victim, the defendant drove the group to a place where the victim was further beaten and eventually shot by another member of the group. The defendant was convicted of manslaughter and given the maximum sentence of twenty-one years. The Supreme Court upheld the sentence because of the extreme brutality involved in the offense, and the fact that the trial judge found a considerable risk that the defendant would be involved in further criminal activity.
In State v. Germain, 433 So.2d 110 (La. 1983), defendant was convicted of manslaughter in the beating death of his three-year old step-daughter. At trial, testimony revealed that the child had bruises of all colors over her entire body, including too many small contusions on the brain to count. Defendant was sentenced to the maximum term of twenty-one years. The trial court found that the death of the child was not caused by one isolated instance of abuse, but by a pattern of abuse. This was affirmed, the Supreme Court holding that a lesser sentence would deprecate the seriousness of the offense.
In State v. Mathews, 428 So.2d 988 (La. App. 1st Cir.1983), defendant was convicted of manslaughter in the death of his estranged wife. The estranged wife began dating a man named Mr. Smith, which caused a great deal of animosity between defendant and Mr. Smith. Defendant saw his estranged wife talking to Mr. Smith at his mother-in-law's house. Defendant pulled a gun on Mr. Smith, but the wife intervened and prevented any further action. Mr. Smith fled, and defendant and his estranged wife argued over the incident. When his wife told him she was going to meet Mr. Smith, defendant fired *1081 three shots into her head at close range, fatalling wounding her. The defendant was given the maximum sentence of twenty-one years. This sentence was affirmed, the court finding that the defendant had an extensive criminal record, including crimes against the person. He had previously beaten his wife, including one incident which required hospitalization. The court also found that a lesser sentence would deprecate the seriousness of the offense.
Finally, consideration must be given to the case of State v. Hayes, 446 So.2d 1233 (La.App. 4th Cir.1984). In that case, the defendant was asked to babysit for his two-year old son born out of wedlock to his former girlfriend. The mother left the child with the defendant while the mother went to work. When the defendant returned the child to his mother that afternoon, the child was unconscious and had several bruises on his head. The mother brought the child to the hospital, where he died two days later from trauma caused by multiple blows to the head. Defendant testified that the child struck his head when he fell off the bed and when he was hit on the head by the door. The trial court (after defendant waived his right to trial by jury) found the story to be incredible. The trial court found the defendant guilty and sentenced defendant to the maximum term of twenty-one years.
On appeal, the conviction was affirmed, but the sentence was vacated. The court found that although the offense was serious and reprehensible because defendant caused the death of a two-year old boy, appropriate credit must be given to the mitigating factors in the case. The court paid particular attention to the defendant's pre-sentence investigation report. The report stated that the defendant had no prior record, including no arrests. The present offense was the only offense, either as an adult or juvenile. The probation officer apparently felt that the chance that defendant would commit another crime was slight. Because of these considerations, the court felt that the sentence was excessive.
The present case contains many similarities to Hayes, supra. The pre-sentence investigation report contains confidential information favorable to Shirley Maillian. It shows that she has two small children, no prior criminal history, and a steady employment history. The report also contains a statement by Mrs. Maillian's psychiatrist saying that he feels Mrs. Maillian would not be a threat to anyone. We feel that this case is not one of those cases which justifies the imposition of the maximum sentence.
Since we believe the sentence is excessive and prohibited by the Louisiana Constitution Article I, Section 20, we vacate the sentence and remand the case to the trial court for resentencing in accordance with the views expressed in the opinion.
CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED FOR RESENTENCING.
SHORTESS, J., dissents and assigns reasons.
SHORTESS, Judge, dissenting.
I agree with the majority's treatment of the excessive sentence assignment of error but would go further. I would reverse and remand for a new trial. This record clearly establishes a pattern of prosecutorial misconduct, which began with the State's opening statement and continued practically to the close of the State's case, in attempting to inject into the trial irrelevant and immaterial evidence as to defendant's bad character. A mistrial should have been granted.
I respectfully dissent.